Marie E. MARLOW, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 90–956.

United States Court of Veterans Appeals.

May 18, 1993.

Marie E. Marlow, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Michael R. Smalls, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Associate Judges.

NEBEKER, Chief Judge:

On February 20, 1992, Albert A. Mokal filed a motion for review of this Court's February 5, 1992, memorandum decision, which affirmed a Board of Veterans' Appeals (BVA or Board) decision denying entitlement to an earlier effective date for special monthly compensation. Because Mr. Mokal's motion raised the issue of "clear and unmistakable error," an issue then being addressed by the Court in *Russell v. Principi*, 3 Vet.App. 310 (1992), the Court held the motion for review in abeyance. Subsequently, Mr. Mokal died and, the Secretary of Veterans Affairs maintaining that "appellant [the veteran's daughter] would potentially be eligible for receipt of any accrued benefits necessary to reimburse her for the expenses she incurred for the veteran's last sickness and his burial pursuant to 38 U.S.C. § 5121(a)(5)", Appellee's Memorandum at 3, Marie E. Marlow was substituted as appellant for purposes of proceedings in this Court. The Court now grants review, vacates the February 5, 1992, memorandum decision, and holds that the Board's decision finding no "clear and unmistakable error" was arbitrary and capricious.

## I.

Mr. Mokal served in the United States Army from January 1944 to May 1946. In November of 1944, he suffered a severe head injury in combat. Service medical records (SMRs) indicate that after his injury he suffered from complete motor aphasia, R. at 8, 12, 17–18, 37, 41–42, that his entire right side was completely paralyzed, and that two months after his injury, he was "unable to speak or cooperate. Is very sluggish, apparently can understand some things, but cannot indicate understanding." R. at 44. In medical reports dated January and March 1945, he was diagnosed with complete aphasia. R. at 51, 55, 88. A December 29, 1945, report showed him as still unable to speak; unable to name objects unaided, repeat names of objects, or handle the simplest arithmetic operations; and able to follow oral directions correctly only 55% of the time. R.

at 109. A June 20, 1945, examination showed similar results except that he followed oral directions correctly only 40% of the time. The examiner opined that "further improvement in language functions will probably be very gradual and very limited." R. at 117. His discharge examination indicated that he was "[i]ncapacitated by interference with normal physical and mental activity," and that "[m]aximum hospital treatment [had] been obtained." R. at 128. The record also reveals that appellant suffered from epileptic convulsions. R. at 56, 126. In May of 1946, he was granted a temporary 100% disability rating for his head injury. R. at 133.

A January 3, 1946, Veterans' Administration (now Department of Veterans Affairs) (VA) physical examination revealed the following:

Patient unable to speak but can hear well. Is learning to write with his left hand. Because of his inability to talk his intelligence and general knowledge are difficult to test. His memory is good and he is well oriented. Cooperates well and is attentive. No hallucinations nor delusions. Cannot concentrate for long—gets headaches. Gets occasional attacks of convulsions with residual severe headaches.

R. at 148. Similarly, a July 13, 1946, VA examination report showed him as "practically completely helpless. Has to have help to undress for physical functions." R. at 140. On August 13, 1946, he was granted service connection for complete spastic paralysis right side, rated as 100% disabling, and given special monthly compensation under 38 U.S.C.A. § 1114(m) (West 1991) due to the loss of the use of one hand and one foot, which rendered him so helpless as to be in need of regular aid and attendance. R. at 141.

The veteran filed an application for an increased rating on October 6, 1947, R. at 154, and later submitted a November 28, 1947, statement from Dr. Cyril A. Whalen, who opined that "because of the unpredictable nature of [the veteran's] [grand mal epileptic] attacks, he requires constant attendance." R. at 157. In February 1948,

the Regional Office (RO) granted him special monthly compensation under section 1114(n). R. at 160. A July 11, 1948, VA examination defined his condition as extreme; the examiner noted, however, that

It was interesting to note that this patient has had no help in reconditioning himself. He has had no benifit [sic] of reeducation. The patient has lots of "intestinal fortitude" and probably would be helped a great deal if he were taught to write or use a type writer [sic]. It is my opinion that some effort should be made to rehabilitate himself [sic] by some form of education.

R. at 167. In October 1948, the RO continued the rating granted in February. R. at 169.

The veteran applied for an increased rating in 1980, arguing that his condition entitled him to special monthly compensation under 38 U.S.C.A. § 314(o) (West 1978) (redesignated as 38 U.S.C.A. § 1114(o) (West 1991 & Supp.1993)) since he qualified for regular aid and attendance under § 1114(l) and (m). With his application, he submitted letters from two doctors who opined that the veteran could not understand most of what was said to him and that he had been that way since his initial injury. R. at 217–19. In 1981, the RO granted a higher rating, with an effective date of March 24, 1980. R. at 235.

The veteran subsequently challenged the effective date by alleging "clear and unmistakable error," under 38 C.F.R. § 3.105 (1992), in the February 1948 rating decision. His claim was denied, and on July 18, 1984, the Board held there was no "clear and unmistakable error" in the February 1948 RO decision. R. at 305. The Board granted reconsideration on January 7, 1986, and again denied the claim. R. at 324.

On August 14, 1989, the veteran alleged "clear and unmistakable error" in what he termed as a "September 1948" RO decision. His claim was denied and he appealed to the Board, which remanded the case for the RO to conduct a de novo review of whether the "September 1948" RO decision contained "clear and unmistakable error." R.

at 394. The rating office found no "clear and unmistakable error" and the veteran again appealed to the Board. The Board, after noting that the September 1948 RO decision was really issued in October 1948, found that given the evidence of record, the rating decision was within the judgment of the RO, and therefore not clearly and unmistakably erroneous.

## II.

Section 1114 (*l*), (m), (n), and (*o*), of title 38, United States Code Annotated, has remained essentially unchanged, except for the amount of compensation, since 1946. It provides, in pertinent part,

(*l*) if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both feet, or of one hand and one foot, ... *or is permanently bedridden or so helpless as to be in need of regular aid and attendance*, the monthly compensation shall be $2,089;

(m) if the veteran, as the result of service-connected disability, has suffered the anatomical loss or loss ... of one arm and one leg at levels, or with complications, preventing natural elbow and knee action with prostheses in place ..., rendering such veteran so helpless as to be in need of *regular aid and attendance*, the monthly compensation shall be $2,302;

(n) if the veteran, as the result of service-connected disability, ... has suffered the anatomical loss of one arm and one leg so near the shoulder and hip as to prevent the use of prosthetic appliances, ... the monthly compensation shall be $2,619;

(*o*) if the veteran, as the result of service-connected disability, has suffered disability under conditions which would entitle such veteran to *two or more* of the rates provided in one or more subsections (*l*) through (n) of this section, *no condition being considered twice in the determination*, ... the monthly compensation shall be $2,927.

38 U.S.C.A. § 1114 (*l*)-(*o*) (West 1991 & Supp.1993) (emphasis added). Appellant asserts that the medical evidence available to the RO in 1948 revealed that the veteran's disabilities rendered him in need of aid and attendance under both sections (*l*) and (m); that he therefore was entitled to the higher rating of (*o*); and that the Board erred in not so finding.

In *Russell, supra,* we defined "clear and unmistakable error" as follows:

Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [It] is the sort of error which, had it not been made, would have manifestly changed the outcome.... They are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed.

3 Vet.App. at 313.

█ The Board held that such error did not exist in the October 1948 rating decision:

Records do not show, unequivocally, such helplessness as to warrant a separate finding of benefits under the provisions of [38 U.S.C.A. § 1114(*l*)], remembering that one hand and one foot have been considered and could not be considered again, in the helplessness determination. The veteran was described as having a short attention span, and he had communication problems, but he was generally well oriented, without delusions, hallucinations, or other overwhelming pathology rendering him helpless, with one hand and one foot no longer considered. In fact, the examiner, in July 1948, suggested that the veteran might well profit from rehabilitation training.

*Albert A. Mokal,* BVA 90-29935, at 13-14 (Aug. 31, 1990). Our review is limited to determining whether this conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 38 U.S.C.A. § 7261(a)(3)(A) (West 1991); *Russell,* 3 Vet.App. at 315.

We recognize the difficulty of determining which facts the RO considered in October 1948, or which statutes it applied, given that the decision simply continued the Feb-

ruary 1948 rating action and supplied no explanation for so doing. R. at 169. Similarly, the February 1948 rating action provides no indication as to whether the RO had all of the evidence before it, or if it considered whether Mr. Mokal's ailments, ignoring the paralysis of his arm and leg, rendered him in need of aid and attendance under 38 U.S.C.A. § 1114(*l*). Obviously, if the RO failed to apply section 1114(*l*), this would be "the sort of error which, had it not been made, would have manifestly changed the outcome" of the decision. *Russell*, 3 Vet.App. at 313. However, given that the RO decision reveals so little, we are left to determine, based on the regulatory provisions and the evidence of record predating the RO decision, whether "it can be said that reasonable minds could only conclude that the original decision was fatally flawed." *Id.*

█ We hold that the decision was "fatally flawed." The medical records available prior to the RO's decision in 1948 reveal that the veteran's service-connected disabilities, without consideration of the paralysis of his right side, rendered him in need of aid and attendance. He suffered from aphasia (loss or impairment of the power to use or comprehend words) including aphonia (loss of voice and all but whispered speech) and alexia (loss of ability to read), and was prone to epileptic convulsions. R. at 8, 12, 17–18, 37, 41–42, 44, 46, 51, 55–56, 88, 109, 113–14, 117, 126, 128, 132, 145, 156–59, 161. The veteran's treating physician opined that the epileptic seizures alone required that the veteran have "constant attendance." R. at 157. Furthermore, the VA recognized then that the veteran suffered from total aphasia and that his condition had not changed since discharge. R. at 142, 158, 160.

Only two statements in the record differ in any way from those listed above, and it was on these two statements that the Board rested its decision. One is from the July 1948 VA examination (also quoted above):

> [T]his patient has had no help in reconditioning himself. He has had no benifit [sic] of reeducation. The patient has lots

of "intestinal fortitude" and probably would be helped a great deal if he were taught to write or use a type writer [sic]. It is my opinion that some effort should be made to rehabilitate himself [sic] by some form of education.

R. at 167. We note, however, that this statement is not a conclusion as to the veteran's condition at the time, but an observation of his courage and a suggestion for a course of treatment.

The second statement is from the July 8, 1947, VA examination:

> Patient is unable to speak but can hear well. Is learning to write with his left hand. Because of his inability to talk his intelligence and general knowledge are difficult to test. His memory is good and he is well oriented. Cooperates well and is attentive. No hallucinations nor delusions....

R. at 148. Although this statement might suggest that the veteran's only disability is an inability to talk, the examination as a whole reveals otherwise. The same examination report goes on to state that the veteran "[c]annot concentrate for long— gets headaches. Gets occasional attacks and convulsions with residual severe headaches.... [Patient] is unable to talk or write.... [Patient] cannot concentrate for long so that he cannot interest himself with reading." R. at 150–51.

At issue here is not whether a person with total aphasia requires regular aid and attendance under section 1114(*l*); that is a given. The issue is whether the record unequivocally reveals that Mr. Mokal suffered from total aphasia at the time of the 1948 rating action, so as to qualify him for special monthly compensation under section 1114(*l*), in addition to that provided unquestionably under section 1114(m) for his right side impairment. We hold that the record so reveals, and that "it can be said that reasonable minds could only conclude that the original decision was fatally flawed." *Russell*, 3 Vet.App. at 315.

█ The next question then is whether the Board was arbitrary in finding to the contrary. We hold that it was.

The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)). *See Smith v. Derwinski,* 1 Vet.App. 267, 279–80 (1991). In analyzing the Board's explanation, we must consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n.,* 463 U.S. at 43, 103 S.Ct. at 2866–67 (quoting *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)). The Board's decision is arbitrary if the Board "entirely failed to consider an important aspect of the problem, ... or [if the decision] is so implausible that it could not be ascribed to a difference in view...." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2867.

Here, the Board's reasoning reveals that it ignored overwhelming evidence in the form of numerous medical statements diagnosing the veteran with complete aphasia, and conclusions by the RO and medical personnel that his condition had remained static since discharge. Instead, the Board based its opinion on two statements, one which was, at best, a suggested course of treatment rather than a diagnosis, and the other which, when viewed in light of the entire examination, revealed that the Board read the record selectively. We hold that, under the facts of this case, the Board's decision was arbitrary.

In so holding, we must be certain that we are not reweighing the evidence. This case does not even present an opportunity for such an impermissible step. It is a case in which the uncontroverted facts compel the decision of entitlement under section 1114(*o*), *supra,* as a matter of law. There is no rational factual predicate for concluding otherwise.

Accordingly, the Board decision is REVERSED and the case is REMANDED pursuant to 38 U.S.C.A. § 7261(a)(3)(A) (West 1991), for an award of any amount due under 38 U.S.C.A. § 1114(*o*). *See* 38 U.S.C.A. § 5121(a) (West 1991) and 38 C.F.R. § 3.1000(a) (1991). This Court's February 5, 1992, decision is vacated. *See Bethea v. Derwinski,* 2 Vet.App. 252, 254 (1992).