Loreto LIZASO, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–33.

United States Court of Veterans Appeals.

Aug. 6, 1993.

Loreto Lizaso, pro se.

James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Barbara J. Finsness, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and IVERS, Judges.

IVERS, Judge:

Loreto Lizaso appeals from a November 15, 1991, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for revocation of the forfeiture of his rights to Department of Veterans Affairs benefits under the provisions of 38 U.S.C.A. § 6104(a) (West 1991) on the grounds that no new and material evidence had been submitted to reopen the claim. The BVA also reviewed previous BVA decisions for obvious error under 38 U.S.C.A. § 7103 (West 1991). The Secretary of Veterans Affairs (Secretary) filed a motion for summary affirmance. The Court has jurisdiction of the case under 38 U.S.C.A. § 7252(a) (West 1991). For the reasons stated below, the Court affirms the decision of the Board in part and vacates it in part and remands the matter for further development consistent with this opinion.

## I. FACTS

Appellant served in the Philippine Scouts (PS) from August 1934 to March 1945 and with the Army of the United States (AUS) from March 1945 to May 1946. *Loreto Lisazo*, BVA 91–36944, at 2 (Nov. 15, 1991); R. at 1–2, 50, 55, 207–10. On August 10, 1955, a Veterans' Administration (now Department of Veterans Affairs) (VA) Central Committee on Waivers and Forfeitures (CCW & F) determined that the veteran had rendered assistance to an enemy of the United States during the Japanese occupation of the Philippines during World War II and that therefore the veteran had forfeited all accrued or future VA benefits under the provisions of Section 4, Public Law 144, 78th Congress (now 38 U.S.C.A. § 6104(a)). R. at 50. The veteran has appealed this decision many times on several different grounds, and over the years the Board has rendered several decisions on the matter. R. at 65, 120, 166.

On April 9, 1942, while serving with the PS at Signal Hill, Bataan, the veteran's unit surrendered to the Japanese and he was taken prisoner. R. at 41–42. According to the veteran, he became ill with malaria and dysentery in May 1942, and he was released by the Japanese in August 1942 after signing a paper stating that he would not offer resistance to the Japanese. R. at 42–43. The veteran claimed that he was sick for about one year. In September 1943, he obtained a job with the Japanese-sponsored and -controlled Manila Police Force (also known as the Metropolitan Constabulary (MC) or the Bureau of Constabulary (BC)), a job which he held until December 1944 or January 1945. R. at 42. He also claimed that in September 1944, after the Americans bombed Manila, he joined with the "propaganda corps" of a guerilla unit, the PQOG (President Quezon's Own Guerillas) and that he remained with the guerilla unit until reporting for military control at Camp Olivas on March 6, 1945. R. at 42.

On September 20, 1945, a U.S. Army Board of Officers, also referred to as a Philippine Scout Loyalty Board, was appointed for the purpose of determining whether the veteran served under the Japanese or a Japanese puppet government in any capacity. R. at 10. The Board met on October 11, 1945, and rendered its decision on November 4, 1945. R. at 3–5. The Board found that "[Corporal] Loreto Lizaso ... was an armed member of the constabulary from July 1943 to December 1944" and that "he could present no evidence to the Board to indicate that he had remained loyal during the period so employed." R. at 9. The Board recommended that the veteran "be discharged from the service with a character rating of less than 'Good.'" *Id.* In accordance with its findings, the Board held,

> the discharge from the [PS] for the purpose of reenlistment in the [AUS] and the subsequent reenlistment in the [AUS] are hereby rescinded for fraud by reason of the concealment of service under the Japanese Puppet Government. [Corporal] Loreto Lizaso ... will be discharged from the [PS] for the convenience of the Government under conditions other than honorable with a character rating of "Fair".

R. at 4.

On December 22, 1945, the veteran requested a rehearing before the Loyalty Board based upon additional evidence. R. at 7. The additional evidence consisted of an affidavit from Crisogono Maquiraya who stated,

> [A]s an Intelligence Officer of the [PS] Guerrilla[s] under the over-all command of [Lieutenant] Sandico, I had an ample time to study and observe the activities of Corp Loreto Lizaso while serving in the MC, known as the Manila Police. [Following an investigation,] ... I found ... that Corp Lizaso's services in the Manila Police was [sic] not a menace to the activities of the Guerrilla[s], and on several occasions [he] was willing to give me advance information concerning zonification [sic] which were vital for the security of members of [PS] Guerrilla[s] ... Because of this, I recommended him to [Lieutenant] Sandico as a prospective member but failed to get his identifica-

tion card due to the transfer of [Lieutenant] Sandico's [Headquarters] to Cavite.

R. at 6. On December 28, 1945, a memorandum from the Loyalty Board stated that the Board had considered the additional evidence presented and felt that it did not warrant a rehearing because it did "not prove this man's membership in any recognized guerrilla orga[nization]." R. at 7.

On March 18, 1946, the Loyalty Board rescinded its action of November 4, 1945, and allowed the veteran to be retained in the AUS. R. at 8. The Board stated,

> As the soldier's original processing affidavit discloses all employment and service for the Japanese or puppet government considered by the Board and the record contains no evidence of concealment of such facts by the soldier at the time of his discharge from the [PS] and reenlistment in the [AUS], there is no evidence of fraudulent enlistment. [Corporal] Loreto Lizaso will be retained in the service under his current enlistment.

*Id.*

On July 30, 1946, the veteran submitted VA Form 508, an application for educational benefits, to the VA. R. at 15–17. On the form he denied ever having rendered assistance to an enemy of the United States. R. at 15. On October 3, 1946, the Vocational Rehabilitation and Education Division (VR & ED) of the Manila VA Regional Office (RO) requested a field examination for the purpose of determining the veteran's loyalty status. R. at 18. The record contains a letter from Captain Gordon H. Simmons of the United States Army Forces, Western Pacific, dated October 29, 1946, to "Manager, VA" in Manila, which stated that Loreto Lizaso had been "determined by the Loyalty Status Board to be disloyal." R. at 17.

The report of the VA field examiner, dated November 13, 1946, consisted of a transcript of a deposition of the veteran taken on November 8, 1946, and an undated letter from Captain Simmons to "Manager, [VA]" in Manila. R. at 19–22. The undated letter stated, inter alia,

> 1. Reference is made to letter this headquarters file GSXRP, dated 29 Oct 46, subject: "Loyalty Status of Members of the Army of the United States." LORETO LIZASO, ASN 6865978, is erroniously [sic] shown as disloyal.
> 2. It has been determined that LORETO LIZASO remained continously [sic] loyal to the United States of America throughout the entire occupation of the Philippines by the Japanese, notwithstanding his services with the Puppet Government.

R. at 22. In his deposition, the veteran stated, inter alia, that while still working for the Manila Police Department in September 1944, he joined the PQOG unit where his duties "were to convey information to the Headquarters, PQOG in Caramona, Cavite, and that he quit his job with the Manila Police in December 1944. R. at 19–21. During the deposition, the field examiner noted that the veteran had "been found guilty of disloyalty during the Japanese occupation" and asked whether the veteran had anything to say or submit to refute this charge. R. at 20. The veteran stated, inter alia,

> I was required to appear before a loyalty board (composed of three U.S. Army Officers) on two different occasions. The reason I went before the Board twice was that the second time I ... submitted evidence and sworn statements covering my guerrilla activities. I am submitting to you herewith a copy of a letter of Headquarters, United States Army Forces, Western Pacific, dated March 29, 1946, signed by command of Lieutenant General Styer, to the effect that my activities during the Japanese [occupation] were not considered as an abandonment of loyalty to the United States of America. The letter is addressed to the Commanding Officer, 3rd M.P. Bn[,] the unit to which I was assigned.

R. at 20. On January 3, 1947, the Manila RO sent the veteran a letter stating, "We are glad to inform you that your Form 508 has been cleared. Please come to this Office and get your Certificate of Eligibility and Entitlement which will authorize your

employment in any approved school." R. at 57.

On January 26, 1948, the VR & ED of the Manila RO requested information from the Army regarding the veteran's service. R. at 23. The information received from the Army reflected, inter alia, that the veteran "was not in a casualty status for the period from [January 1, 1943] to [March 5, 1945]." *Id.* On March 17, 1949, the VR & ED again requested information from the Army. R. at 24. The Army responded by reporting the veteran's active duty dates, the dates that he was held as a prisoner of war (POW) by the Japanese, and the dates that he was not "under military control." *Id.* In addition, the Army stated that appellant had "[n]o guerrilla status nor does the veteran have any service under a recognized commissioned officer of the Armed Forces of the United States." *Id.*

In August 1954, the veteran applied to the VA for compensation or pension, claiming that he suffered residuals from dysentery which he had contracted while a POW. R. at 25–33. On his application materials, the veteran acknowledged that he had been charged between 1945 and 1946 with disloyalty and stated, "The [Loyalty] Board found out that the activities I rendered during the Japanese occupation of the Philippines did not constitute an abandonment of loyalty to the U[nited] S[tates] of America. Enclosed is a copy of my clearance." R. at 33. There is no "clearance" document following the application materials in the record.

On September 10, 1954, the adjudication division of the Manila RO requested information from the Army, specifically, a "complete service breakdown and clinicals." R. at 36. The Army replied, stating, inter alia, "Reason for discharge: Convenience of the Government, Demobilization.... Prior Service: Enlisted 15 August 1934 and honorably discharged 14 August 1937[; e]nlisted 15 August 1937 and honorably discharged 14 August 1940[; e]nlisted 15 August 1940 and honorably discharged 10 March 1945. Subject individual was not in a casualty status for the period from 1 January 1943 to 5 March 1945." *Id.* The

record also contains a document, dated September 20, 1954, entitled "Summary of Information Regarding LORETO LIZASO Extracted from Files of FEAF OSI District Office No. 2, APO 74." R. at 35. This document states, inter alia, "One LORETO LISAZO was listed ... among the privates, reappointed in the Japanese sponsored [BC].... It has not been established by this office that subjects are one and the same as the name appearing in your request. Your attention is invited to VA Form 508 Item No. 13, wherein LIZASO was employed in the Manila Police Dept during the Japanese occupation." *Id.*

In a January 3, 1955, memorandum, a VA adjudicator recommended that the veteran's case be submitted to the CCW & F to determine whether the veteran "rendered aid and assistance to an enemy of the United States," thereby forfeiting all accrued or future benefits pursuant to the provisions of Section 4, Public Law 144, 78th Congress. R. at 45. The memorandum stated, inter alia,

> The [Loyalty] Board found that claimant presented no evidence and recommended his discharge with character rating of less than "Good[."] The Reviewing Authority rescinded the recommendation of the Trial Board and held that as claimant did not conceal his service he should be retained under his current enlistment.
>
> ... It is significant to note that claimant was reappointed in the MC (BC) ... [June 8, 1944]. This reappointment was made after the screening of MC personnel in May [and] Jun[e] [19]44 to weed out undesirables in the force. It appears from the records that several MC personnel of doubtful loyalty (suspected of having guerrilla connections), overage, physically unfit for service, etc.[,] were separated from the force in this rigid screening....
>
> ... The evidence of record in the instant case shows that claimant voluntarily served in the MC (BC) from Jul[y] [19]43 to Dec[ember] [19]44 or [January 31, 1945]; that he remained in service inspite [sic] of intense bombing raids over the City on [September 21, September 22,

and November 12, 1944] and after the Declaration of War by Pres[ident] Laurel on [September 24, 1944].

... [C]laimant by his service in this organization may have rendered aid and assistance to an enemy of the United States

...

R. at 46.

On August 10, 1955, the CCW & F rendered a decision in the veteran's case. The Committee stated,

This Committee is of the opinion that the evidence presented satisfactorily establishes that the services which the veteran performed in the Japanese sponsored and controlled [BC] ... constituted rendering assistance to an enemy of the United States ... within the purview of Section 4, Public Law 144, 78th Congress. It is determined, therefore, that the veteran, Loreto Lizaso, has forfeited under the cited act all accrued or future [VA] benefits ... based upon any periods of service which commenced prior to or during the commission of the offenses....

R. at 50. On September 2, 1955, the veteran appealed the Committee's decision, stating, inter alia,

[A]fter the liberation, I ... voluntarily confessed to the US authority my former service with the Manila Police Force, and through rigid investigation by proper authority, I was cleared by the Loyalty Status Board as evidence[d] by carbon copy furnished to me by [Lieutenant General] Styer of Hq. USAF, Western Pacific APO 707, dated 29 March 1946 and letter of the US Veterans Administration dated 3 January 1947, signed by the Act[in]g Chief, Registration Sec[tion and VR & ED].

R. at 56. The letter dated March 29, 1946, referred to by the veteran, is addressed to "Commanding Officer, 3rd MP Bn, (PS), APO 75" and states, inter alia,

It is desired [Corporal] LORETO LIZASO ... be advised that *the recommendations* made by the Board of Officers convened by authority of Letter Orders AGPO 3631, Headquarters AFWESPAC dated 20 September 1945, to the effect

*that his activities during the Japanese occupation* of the Philippines *did not constitute an abandonment of loyalty* to the United States of America and that he be retained in service, *have been approved.*

R. at 59 (emphasis added).

On March 21, 1956, the BVA considered the matter for the first time and denied the veteran's appeal. R. at 65–67. In its decision, the Board did not mention either the undated letter from Captain Simmons, United States Army Forces Western Pacific, which stated, inter alia, that the veteran was "erroneously [sic] shown as disloyal" (R. at 22) or the March 29, 1946, letter from Lieutenant General Styer stating that the veteran's "activities during the Japanese occupation ... did not constitute an abandonment of loyalty to the United States." R. at 59.

The record reflects that other BVA decisions were rendered in this case in December 1986 and July 1990. R. at 120, 166. In the December 1986 decision, as in the 1956 decision, the Board did not mention either the undated letter or the March 29, 1946, letter. R. at 120–25. In the July 1990 decision, the only statement made by the Board regarding the March 29, 1946, letter was as follows: "The March 1946 service department message ... [was] previously of record at the time of the December 1986 Board decision." R. at 170.

The additional evidence submitted by the veteran since the July 1990 BVA decision consists of records of his service which he obtained from the National Personnel Records Center in St. Louis, Missouri (four separate documents showing four terms of service). R. at 207–10. On November 15, 1991, the BVA concluded that the evidence submitted since the 1990 BVA decision was not new and material. In addition, the Board concluded that the March 1956 and July 1990 decisions of the Board "did not involve obvious error and are final, and the claim is not reopened." *Lizaso*, BVA 91–36944, at 3. The veteran filed a timely appeal with this Court.

## II. ANALYSIS ·

### A. New and Material Evidence.

■ The Court reviews issues of whether an appellant has submitted "new and material" evidence on a de novo basis. *Colvin v. Derwinski*, 1 Vet.App. 171 (1991). Material evidence is "relevant and probative of the issue at hand," and new evidence is that which is not "merely cumulative of evidence in the record." *Id.* at 174. The evidence submitted by the veteran since the Board rendered its decision in July 1990 consists of four documents from the National Personnel Records Center in St. Louis, Missouri, which certify the veteran's period of service from 1934 to 1946. R. at 207–10. The Court holds as a matter of law that this evidence was cumulative of evidence already before the Board in 1990, and therefore we affirm the decision of the Board that this evidence was not new and material.

### B. Obvious Error

■ Section 7103(c) of title 38 of the United States Code provides that the Board "may correct an obvious error in the record." 38 U.S.C.A. § 7103(c) (West 1991); 38 C.F.R. § 20.1000(a) (1992). An "obvious" error is one "the existence of which ... is undebatable, or, about which reasonable minds cannot differ." *Russell v. Principi*, 3 Vet.App. 310, 314 (1992) (en banc). The Board, in its decision· of November 15, 1991, which is presently before the Court on appeal, reviewed the March 1956 and July 1990 BVA decisions and found "no obvious error therein." Appellant alleged that the BVA "erred in the application of VA law and regulations with respect to his claim" because he "did not abandon his loyalty to the United States of America." *Lizaso*, BVA 91–36944, at 2. Specifically, appellant noted the finding of the Army Board of Officers "that his activities during the enemy occupation of the Philippines [during] World War II did not constitute an abandonment of loyalty to the United States of America." R. at 226.

The question before the Court is whether the 1991 Board's determination that the March 1956 and July 1990 decisions of the BVA did not involve obvious error was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 38 U.S.C.A. § 7261(a)(3)(A) (West 1991); *cf. Russell*, 3 Vet.App. at 315. The Court noted in *Marlow v. Brown*, 5 Vet.App. 146, 149 (1993),

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, · the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."

*Id.* citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)).

In its review of the 1956 and 1990 BVA decisions, the 1991 Board did not discuss the conflicting documents in the record from the Army regarding its determination of the veteran's loyalty to the United States during the Japanese occupation of the Philippines. For example, the 1991 Board did not mention at all the undated letter from Captain Simmons, which stated, inter alia, that the veteran was "erroniously [sic] shown as disloyal" and which was labeled "Exhibit B" of the November 13, 1946, VA field examiner's report. R. at 22. Similarly, with regard to the March 29, 1946, letter from Lieutenant General Styer stating that the veteran's "activities during the Japanese occupation ... did not constitute an abandonment of loyalty to the United States," the 1991 Board stated merely, "Also submitted [was] a copy of a previously received March 1946 service department message...." *Lizaso*, BVA 91–36944, at 5. That the March 1946 letter was "previously received" is relevant to the issue of whether it constitutes new and material evidence; however, in stating merely that the letter was "previously received" without discussing the content of the document, the 1991 Board did not "articulate a satis-

factory explanation" for its finding that there was no obvious error with regard to the veteran's loyalty status in the BVA decisions of 1956 and 1990. *Marlow*, 5 Vet.App. 146, 149.

In his motion for summary affirmance, the Secretary noted in his recitation of the facts, "The Board of Officers found that [the veteran] was unable to present evidence indicating that he had remained loyal to the United States during [his] employment [with the Manila Police Force]." Secretary's Mot. at 3. In a notation following this statement, the Secretary added, *"But see* (R. 22) (undated statement *purportedly* from service department that appellant was 'erroniously' [sic] shown as disloyal), (R. 59)." *Id.* (emphasis added). With the word "purportedly," the Secretary implies that the undated letter is not actually an Army document. However, we find no evidence in the record to confirm the Secretary's implication of inauthenticity.

The failure of the 1991 Board to provide an adequate explanation for its decision regarding obvious error in the previous BVA decisions "frustrate[s] effective judicial review" in this case. *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990) (quoting *Camp v. Pitts*, 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)). Because the 1991 Board did not "articulate a satisfactory explanation" for its determination that there was no obvious error in the BVA decisions of 1956 and 1990 and because the record on appeal contains conflicting evidence regarding the specific determination which appellant alleges was erroneous, i.e., his disloyalty to the United States during the Japanese occupation of the Philippines, the Court is unable to determine whether the 1991 Board's determination was arbitrary and capricious or not. Such a decision requires a determination of the credibility and authenticity of the documents in question, and it is not the function of this Court to determine the credibility of evidence. *See Goodsell v. Brown*, 5 Vet. App. 36, 40 (1993); *Abernathy v. Derwinski*, 2 Vet.App. 391, 394 (1992); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991); *Gilbert*, 1 Vet.App. at 57. Accordingly, we

vacate the November 15, 1991, decision of the Board with regard to the issue of obvious error and remand the matter for development consistent with this opinion.

## III. CONCLUSION

For the reasons stated above, the November 15, 1991, decision of the BVA is AFFIRMED in part and VACATED in part. We AFFIRM the decision of the Board as to the issue of new and material evidence and VACATE the decision as to the issue of obvious error and REMAND the matter for further development consistent with this opinion.