John William TERNUS III, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 91–1903.

United States Court of Veterans Appeals.

March 29, 1994.

Elinor Roberts, Oakland, CA, was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Amanda Linn Cashion, Washington, DC, were on the pleadings, for appellee.

Before FARLEY, HOLDAWAY, and IVERS, Judges.

IVERS, Judge:

John William Ternus III appeals a September 6, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied an effective date earlier than September 13, 1989, for a 100% rating for service-connected schizophrenia on the grounds that there was no clear and unmistakable error (CUE) in an October 1985 rating reduction or a September 1987 continuation of that reduced rating. *John W. Ternus*, BVA 91–26587 (Sept. 6, 1991). The Secretary has filed a motion for summary affirmance. The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, we reverse the September 1991 decision of the BVA.

## I. FACTUAL BACKGROUND

Appellant served in the United States Army from December 1967 to February 1970, a period including one year of service in Vietnam. R. at 1. After his return from Vietnam in 1969, he was admitted to Letterman General Hospital with a diagnosis of schizophrenia. R. at 31. At that time, he gave a history of psychiatric hospitalization at Fort Ord, California, from May to August 1968 with a diagnosis of schizophrenia. *Ibid.* In February 1970, appellant's case was reviewed by a medical board, which noted a diagnosis of

[s]chizophrenia reaction, undifferentiated type, chronic, moderate, treated, slightly improved, manifested by poor interpersonal relationships, poor motivation, withdrawn behavior, chronic depression, paranoid ideation and inappropriate affect, minimal stress, routine military duty; moderate predisposition, lifelong history of poor interpersonal relationships; marked impairment.

R. at 29; *see also* R. at 33. The medical board recommended that appellant be "[s]eparated from military service for [an] EPTS [existed prior to service] condition." R. at 30; *see also* R. at 33. Appellant was honorably discharged for medical reasons on February 25, 1970. R. at 1.

On March 27, 1970, a VA regional office (RO) granted service connection for schizophrenic reaction, undifferentiated type, rated as 10% disabling. R. at 94.

In June 1971, in connection with a claim for an increase in the 10% rating, appellant was examined by the VA. R. at 36–40. The examination report stated this diagnosis:

Schizophrenic Reaction, undifferentiated type with paranoid coloring, manifested by confused thinking and difficulty in concentration with perplexity, ideas of reference, fear states and a disturbance of affect. Currently the mental illness is active and he was advised to seek hospitalization and medication. He is competent to handle VA funds and that's about all.

R. at 39. On July 30, 1971, the RO sent notification to appellant that it had denied the claim for an increase for his service-connected schizophrenia, which continued to be rated 10% disabling. R. at 96; *see* R. at 95.

In April 1975, appellant was again examined by the VA. R. at 43. At that time, the examination report stated: "Schizophrenia, chronic, undifferentiated by history. At the present time he is almost in complete remission...." R. at 44. The VA examiner also stated that appellant was "employable providing not too much pressure is placed on him. His social activities are greatly limited because of his inability to relate with other people and his general suspiciousness which is less severe than it was but is still present."

R. at 43. On June 6, 1975, the RO sent notification to appellant that it would continue rating his schizophrenia as 10% disabling. R. at 97; *see* R. at 98.

On June 7, 1976, appellant was interviewed and tested at a VA mental health clinic by a VA psychologist. R. at 46, 60–64. At this interview, appellant complained that his television had been talking to him but he became vague when asked to explain. R. at 62. The examiner noted that appellant was a "rather vague historian for someone who says he is a senior psychology student." *Ibid.* Appellant told the examiner that he had spent 5 years at junior college and the past year at a university and that he had completed 17 psychology courses but lacked 7 courses to meet the graduation requirements. *Ibid.* He also admitted to "TV influence [and] reference" and "seemed vaguely paranoid about [his roommate]." *Ibid.* The examiner noted that appellant was in no apparent distress, that he avoided eye contact for most of the interview, that he was oriented and in contact with reality, and that his affect was appropriate although he would "stop during a monologue and gaze blankly, then pick up his train of thought similar to the manner of hallucinating patients." R. at 63. The examiner stated his impression that appellant presented a questionable history of schizophrenic episodes and expressed the need to "[rule out] schizophrenia, paranoid type vs. borderline syndrome." R. at 64. A June 15, 1976, VA psychological report stated that the results of a test administered to appellant were "indicative of schizophrenia, paranoid type." R. at 65.

On July 25, 1977, appellant sought an increase in the 10% disability rating for his service-connected schizophrenia. *See* R. at 99. On December 29, 1977, appellant underwent a VA examination. R. at 67. The resulting report gave a final diagnosis of "[s]chizophrenia, undifferentiated, chronic." R. at 69. In that report, the examining VA psychiatrist stated:

> This patient appears to have a chronic undifferentiated schizophrenia condition which has remained unchanged since being out of treatment. He has continued to do reasonably well academically and has managed to hold a job at the same time for the past 1¾ years. Socially he is terribly isolated and has virtually no social skills. He finds his apartment to be an island of security and rarely has anyone other than his brother in the apartment. There is certainly room to question his ability to do anything other than be a student, and one must wonder whether he will ever be able to be gainfully employed upon completion of his academic endeavors. His continuing social isolation will undoubtedly continue at a remarkably abnormal level.

*Ibid.* On March 1, 1978, the RO granted a 30% disability rating. R. at 99. Appellant filed a Notice of Disagreement (NOD) regarding the 30% rating on June 27, 1978. R. at 100.

A July 1978 VA medical certificate provided an impression of paranoid type schizophrenia in partial remission. R. at 72. On July 11, 1979, appellant underwent a VA psychiatric evaluation for compensation purposes. R. at 73. The chief of the mental hygiene clinic diagnosed schizophrenic reaction, chronic, paranoid type, and stated:

> Mr. Ternus exhibits the classical symptomatology of a chronic psychosis. His symptomatology is not dramatic at the present time, and he is certainly not in need of hospitalization. His condition, however, is such that he does not function very well[,] either in terms of interpersonal relations or with respect to school and employment. It is very likely that this man will have difficulty in leading a totally self-sufficient life, now or in the foreseeable future. In terms of symptomatology, Mr. Ternus's psychosis must be considered mild at the present time; in terms of functional impairments, his condition must be considered more severe at the present time.

R. at 74.

On September 7, 1979, following additional evidentiary development and a personal hearing, the RO granted a 70% disability rating for appellant's service-connected schizophrenia, effective June 30, 1978. R. at 150. The RO also granted a total disability rating based on individual unemployability (TDIU), effective June 30, 1978. *Ibid.*

In June 1981, the VA reviewed appellant's condition. *See* R. at 75. The resulting VA psychiatric evaluation gave a diagnosis of schizophrenia, paranoid type, chronic, and stated that appellant "appears socially and economically considerably disabled, but ... competent to handle money." R. at 76. In July 1981, the RO increased the rating for appellant's service-connected schizophrenia to 100% disabling effective June 24, 1981. R. at 152. At the same time, it discontinued appellant's TDIU rating effective June 24, 1981, because it had been supplanted by the 100% schedular rating for his service-connected schizophrenia. *Ibid.*

As part of a routine review, a July 1983 VA psychiatric evaluation provided a diagnosis of chronic paranoid schizophrenia and stated: "This patient is seen as totally incompetent at this time." R. at 79. In the section titled "Mental Status Exam," the VA examining psychiatrist wrote:

This patient is partially disoriented.... He has a rather child-like regressive appearance to him in the way he talks. He is detached to a significant degree. His concentration is poor. His memory is extremely spotty, especially for longer range events which is more reflective of a highly disorganized state of mind. He claims that he sleeps okay. His eating is excessive. He has a history of being quite thin before entering the military and has gained enormous weight since then. He states that he feels like he is monitored by microphones being around quite a bit. He also feels at times that people can put thoughts into his mind. He feels rather uncomfortable around people in general. He prefers to be alone and withdrawn. His thoughts are characterized by paucity in his responses. His affect is manifestly blunted. There is no affective modulation. There is a mixture of anxiety and confusion as well as inability to think in a rational, logical, sequential fashion. There is no frank hallucinations [sic] although the patient states that he hears banging on the walls of his apartment that he attributes to people harrassing [sic] him just before he comes to the VA for an evaluation. When asked why[,] he states[,] "I guess it is because you people are giving me money to live

on." The patient's fund of knowledge is adequate. His judgment is sporadic, impulsive and inconsistent. His level of abstraction is bizarre and his insight is absent.

R. at 78–79. Under Axis I, the VA examiner provided a diagnosis of schizophrenia, chronic, paranoid type. Under Axis V, which is an examiner's overall judgment of a patient's psychological, social, and occupational functioning, the VA examiner stated that appellant presented a "[v]ery low level of functioning." R. at 79. The examiner also noted:

This patient previously has been diagnosed as paranoid schizophrenic. I see him remaining in a highly impaired state and in need of ongoing treatment for this. His life style is extremely constricted. This all seems to have begun in the military for this individual and continues on ... a chronic basis *with some fluctuation* but basically ongoing alienation from people in general.

*Ibid.* (emphasis added). On August 5, 1983, the RO notified appellant that no change was warranted in the schedular 100% disability evaluation for his service-connected schizophrenia. R. at 155. Effective November 15, 1983, the RO also found that appellant was incompetent for VA purposes. R. at 156.

In June 1985, as part of a routine review, appellant underwent a VA psychiatric evaluation. The examination report stated:

Mr. Ternus is an obese male, dressed and groomed adequately. He demonstrates no unusual motions or mannerisms. Speech is clear and coherent. Although his descriptions are rather vague, he denies any current hallucinations or delusions. His associations at times are somewhat loose and disconnected to the content of the question. He is alert and fully oriented. His affect is generally restricted, with little depth or intensity. There is no evidence of inappropriate affect currently. He does not appear anxious or depressed and denies feeling these ways. He denies any current symptoms of thought disorder. There are no deficits in his memory or cognition and me[n]tal status testing. His interpretations of proverbs are concrete

and idiosyncratic.... His judgement is adequate. His insight is limited. He is competent to handle his funds for VA purposes.

SUMMARY: Mr. Ternus demonstrates a history of auditory hallucinations and paranoid delusions beginning in 1968, which seem to extend at least through 1977. He states that he has not required treatment since that time[;] he does however, demonstrate some loosening of associations and a restricted affect and as thus meets the criteria of schizophrenia residual type.

R. at 80–81. Under Axis I, the examiner provided a diagnosis of chronic schizophrenia residual type; under Axis V, the VA examiner indicated that appellant's psychological, social, and occupational functioning was poor. *Ibid.* As a result of the findings on this examination, on October 2, 1985, with reference only to 38 C.F.R. § 3.105(e) (1985), but not to 38 C.F.R. § 3.343 (1985), the RO proposed reducing appellant's 100% rating for schizophrenia to 70% effective January 1, 1986. R. at 159; *see also* 38 C.F.R. § 3.105(e) (1993) (requiring that notice of proposed rating reduction be sent to claimant and allowing claimant 60 days within which to submit evidence regarding the proposal). The RO also found appellant competent for VA purposes effective June 13, 1985. *Ibid.* Appellant disagreed with the rating evaluation (R. at 161–62), but the RO again informed him that he would have to provide additional evidence showing "that the veteran's nervous condition has not improved" in order to avoid the proposed reduction (R. at 160, 163). The record does not contain further correspondence from appellant regarding the proposed reduction, and the 70% rating became effective January 1, 1986. *See* R. at 159–60, 163.

Appellant underwent a VA psychiatric evaluation again in August 1987. R. at 82. At that time, the examiner stated:

This 39–year–old man has ongoing symptoms of schizophrenia, including a formal thought disorder and a fixed delusional system involving the T.V., movies, Hollywood, and grandiose delusion that he will someday become a great actor. His [schizophrenia] is clearly not residual at this point, and unfortunately, he is not availing himself to treatment. He is significantly disabled by virtue of his formal thought disorder and I think it highly unlikely that he would be able either to obtain employment or sustain it. The home film making that was alluded to on the previous exam was clearly not for profit and [was] his own somewhat autistic and bizarre attempt to act out his delusional system.

R. at 85. Under Axis V, the VA examiner evaluated appellant's condition as "[p]oor, with marked impairment in both social relations and occupational functioning on the basis of his schizophrenia." R. at 86. A September 16, 1987, RO rating decision continued appellant's 70% rating and found appellant to be competent for VA purposes. R. at 164–65.

Appellant was reevaluated in September 1989. R. at 87. The VA examiner gave a diagnosis of schizophrenia, residual type, but also stated: "The veteran has difficulty in getting along with people and relationships are difficult. The veteran's industrial capabilities remain impaired and he is incompetent to find or handle gainful employment." R. at 89. On October 30, 1989, the RO increased the disability rating for appellant's service-connected schizophrenia to 100% effective September 13, 1989. R. at 166. On September 5, 1990, appellant filed an NOD, in which he argued that the 100% rating should have been awarded at an earlier effective· date. R. at 168. He argued that the October 1985 rating reduction had been the product of CUE. *Ibid.* In a VA Form 1–9 (Appeal to the BVA), an attorney argued on appellant's behalf that the October 1985 rating reduction contained CUE in that the RO did not apply 38 C.F.R. § 3.343. R. at 178–79. On September 6, 1991, the Board found that there was no CUE in the October 1985 rating reduction or the September 1987 continuation of that reduced rating and denied an effective date earlier than September 13, 1989, for a 100% schedular disability rating for service-connected schizophrenia. *Ternus,* BVA 91–26587, at 6–7.

## II. ANALYSIS

The issue before this Court is limited to whether the BVA's September 1991 decision that there was no CUE in the October 1985 RO rating reduction (or the September 1987 continuation of that rating) was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *see Villalobos v. Principi,* 3 Vet.App. 450, 452 (1992); *Archer v. Principi,* 3 Vet.App. 433, 437 (1992) (Court cannot conduct "plenary review of the merits of the original decision"); *Russell v. Principi,* 3 Vet.App. 310, 315 (1992) (en banc) (Court review of a decision "that has considered possible '[CUE]' in previous adjudications over which [it] does not have jurisdiction is necessarily limited" to standard of review enunciated above). As the Supreme Court has stated,

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)); *see Marlow v. Brown,* 5 Vet.App. 146, 151 (1993). In *Marlow,* this Court discussed the standard for evaluating whether a BVA decision regarding CUE was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law":

> In analyzing the Board's explanation, we must consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n[ ],* 463 U.S. at 43 [103 S.Ct. at 2866–67] ... (quoting *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* 419 U.S. 281, 285, [95 S.Ct. 438, 441, 42 L.Ed.2d 447] ... (1974)). The Board's decision is arbitrary if the Board "entirely failed to consider an important aspect of the problem, ... or [if the decision] is so implausible that it could not be ascribed to a difference in view. ..." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43 [103 S.Ct. at 2867]. ...

*Marlow,* 5 Vet.App. at 151.

 In addition, before this Court may review a BVA decision regarding CUE, "[t]he necessary jurisdictional 'hook'" is a Board adjudication of that issue. *Russell,* 3 Vet.App. at 315. In order for the Board to have adjudicated a CUE claim, a CUE claim "must be raised with specificity regarding when and how [CUE] occurred." *McIntosh v. Brown,* 4 Vet.App. 553, 561 (1993). Recently, the Court synthesized the CUE case-law as follows:

> If [an appellant] wishes to reasonably raise CUE there must be some degree of specificity as to what the alleged error is and, unless it is the kind of error ... that, if true, would be CUE on its face, persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error.

*Fugo v. Brown,* 6 Vet.App. 40, 44 (1993), *motion for review denied,* 6 Vet.App. 152 (1994) (en banc).

 Under 38 C.F.R. § 3.105(a) (1993), "Previous determinations which are final and binding ... will be accepted as correct in the absence of [CUE]." CUE is "undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed *at the time it was made.*" *Russell,* 3 Vet.App. at 313–14 (emphasis added). "Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied. The claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Id.,* 3 Vet.App. at 313. As the Court stated in *Fugo,* 6 Vet.App. at 44, a CUE claim entails a finding that the outcome would be *manifestly* different but for the error. Where evidence establishes such error, the prior decision will be reversed or amended. *Id.,* 3 Vet.App. at 314. "A determination that there was a '[CUE]' must be based on the record and the law that existed at the time of the prior [agency of

original jurisdiction] or BVA decision." *Ibid.; see also Porter v. Brown,* 5 Vet.App. 233, 235–36 (1993).

In a January 17, 1991, VA Form 1–9, appellant (through his attorney) argued that the VA had not followed 38 C.F.R. § 3.343 in October 1985 in reducing appellant's 100% rating for service-connected schizophrenia. R. at 178–79. Therefore, appellant reasonably raised the CUE issue, and the BVA adjudicated that issue.

In assessing the BVA's decision on the CUE claim here, the Court must examine the regulations extant at the time of the October 1985 rating reduction. *See Allin v. Brown,* 6 Vet.App. 207, 211 (1994); *Russell,* 3 Vet.App. at 314. The provision applicable in October 1985 stated:

> Total disability ratings, when warranted by the severity of the condition and not granted purely because of hospital, surgical, or home treatment, or individual unemployability will not be reduced, in the absence of clear error, without examination showing material improvement in physical or mental condition. Examination reports showing material improvement must be evaluated in conjunction with all the facts of record, and consideration must be given particularly to whether the veteran attained improvement under the ordinary conditions of life, i.e., while working or actively seeking work or whether the symptoms have been brought under control by prolonged rest, or generally, by following a regimen which precludes work, and, if the latter, reduction from total disability ratings will not be considered pending reexamination after a period of employment (3 to 6 months).

38 C.F.R. § 3.343(a) (1985). Thus, the initial procedural burden regarding proposed reductions of total disability ratings based on severity, such as the rating involved in this case, falls squarely on the VA to show material improvement from the previous rating examination that had continued a veteran's 100% disability rating.

In its September 1991 decision, the Board quoted 38 C.F.R. § 3.343(a) and stated that a June 1985 VA examination that had formed the basis for the October 1985 rating reduction showed material improvement. *Ternus,* BVA 91–26587, at 2, 5. However, the October 1985 rating reduction relied on the June 1985 VA examination without comparing it to the most recent VA psychiatric evaluation in July 1983 and without reference to or compliance with the procedural requirements of 38 C.F.R. § 3.343(a). In fact, although the June 1985 VA examination provided a diagnosis of residual type schizophrenia, the overall evaluation under Axis V was poor. R. at 81. The July 1983 VA examination evaluated appellant under Axis V as having a "[v]ery low level of functioning." R. at 79. Had the RO compared the two examinations at the time of its proposed rating reduction, it would have been clear under the applicable regulation that there was no *material* improvement given the similar overall judgments under Axis V. In addition, although the June 1985 VA examination noted that appellant had been seeking employment with the motion picture industry (R. at 80), the October 1985 rating reduction did not consider "whether the veteran attained improvement under the ordinary conditions of life, i.e., while working or actively seeking work...." 38 C.F.R. § 3.343(a). Under the plain wording of the regulation, the BVA misapplied 38 C.F.R. § 3.343(a) in determining whether the October 1985 rating reduction was the product of CUE. The Board is "required to apply all relevant statutes and regulations appropriate to the particular case before it." *Browder v. Derwinski,* 1 Vet. App. 204, 205 (1991); *see Dofflemyer v. Derwinski,* 2 Vet.App. 277, 280 (1992); *Akles v. Derwinski,* 1 Vet.App. 118 (1991); *Payne v. Derwinski,* 1 Vet.App. 85 (1990); *Jolley v. Derwinski,* 1 Vet.App. 37 (1990); *see also Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). The BVA's failure in its September 1991 decision on the CUE claim to apply correctly the allocation of burden regarding a showing of material improvement under 38 C.F.R. § 3.343(a) renders the BVA's decision arbitrary and capricious.

In a case decided after the October 1985 proposed rating reduction, the Court re-

stored a total disability rating for schizophrenia where the BVA had reduced the rating under similar circumstances. In *Karnas v. Derwinski*, 1 Vet.App. 308 (1991), the BVA had reduced a veteran's 100% schedular rating on the basis of an examination that showed no material improvement. *Id.*, 1 Vet. App. at 309–10. There, the Court stated: "The VA, in reducing the total disability rating ..., failed to document, through an examination as required by 38 C.F.R. § 3.343(a), that the claimant had materially improved, based on the record and under the ordinary conditions of life, from the date of the last examination.... On the contrary, these two evaluations demonstrate virtually no change in appellant's condition." *Ibid.*; *see also Murincsak v. Derwinski*, 2 Vet.App. 363, 368 (1992); *Hohol v. Derwinski*, 2 Vet. App. 169, 172–73 (1992). The Court, however, does not rely on *Karnas* or any subsequent cases decided by this Court; the regulation in effect in 1985 at the time of the proposed rating reduction plainly required a showing of material improvement.

It is clear that the RO did not have evidence showing material improvement under 38 C.F.R. § 3.343 to warrant a reduction in appellant's total disability rating in October 1985. "Reasonable minds could only conclude that the original decision was fatally flawed because of the failure to consider the applicable regulations." *Olson v. Brown*, 5 Vet.App. 430, 435 (1993). This error, "had it not been made, would have manifestly changed the outcome" of the rating reduction. *Russell*, 3 Vet.App. at 313. Therefore, the Court holds that the BVA's September 1991 decision finding no CUE in the rating reductions is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and must be reversed. The September 1987 rating decision continuing the 70% rating for appellant's service-connected schizophrenia also was predicated on CUE for the same reasons.

### III. CONCLUSION

For the reasons stated above, we deny the Secretary's motion for summary affirmance, REVERSE the BVA's September 1991 decision, and REMAND the matter for the Board to reinstate appellant's 100% schedular rating for service-connected schizophrenia from January 1, 1986 (the effective date of the October 1985 rating reduction), to September 13, 1989 (the effective date of the increase to a 100% rating).