Larry W. HILLYARD, Appellant,

v.

Edward J. DERWINSKI, Secretary
of Veterans Affairs, Appellee.

No. 90–181.

United States Court of Veterans Appeals.

Argued April 19, 1991.

Decided July 8, 1991.

As Amended July 18 and July 19, 1991.

Diane Boyd Rauber argued the case, Steven R. Thorpe, Mark A. Venuti, and Barton F. Stichman, Washington, D.C., were on the brief, for appellant.

John D. Lindsay, Jr., with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Andrew J. Mullen, Deputy Asst. Gen. Counsel, Washington, D.C., were on the motion for summary affirmance, for appellee.

Before KRAMER, HOLDAWAY and IVERS, Associate Judges.

IVERS, Associate Judge:

Appellant, Larry W. Hillyard, appeals from a 1989 Board of Veterans' Appeals (BVA) decision which denied his request to increase his disability rating for post-traumatic stress disorder (PTSD) from 30 percent to 50 percent. *Larry W. Hillyard,* loc. no. 934178 (BVA Dec. 4, 1989). Appellee's motion for summary affirmance and to stay further proceedings was denied at oral argument. We affirm the BVA's decision on the grounds that the decision was not clearly erroneous.

## BACKGROUND

Appellant served in the Army as a combat medic during the Vietnam war. Br. of Appellant at 3. In April 1969, he lost his left foot and received multiple shrapnel wounds when he stepped on a land mine. R. at 4. Following discharge, appellant completed a two-year nursing program and became certified as a registered nurse. However, while working in a hospital, he became addicted to several pain killers and tranquilizers. In April 1978, he was relieved from his duties as a nurse and admit-

ted to a drug dependency program. R. at 6–7. A few months after appellant successfully completed the program, he fractured the remaining part of his left leg. He was prescribed pain killers after surgery, but left the hospital, against medical advice, when he was transferred to a withdrawal ward. R. at 9–11. There is no further evidence of chemical dependency problems.

In March 1983, appellant suffered an inferior myocardial infarction (heart attack) at the age of 34. R. at 12–13. He subsequently filed a claim for "delayed stress syndrome" and for his heart attack which he alleged were both brought on by stress. He stated that, for the past thirteen years, he had experienced "flashbacks, reoccurring dreams, (mostly dealing with reliving the traumatic experience of stepping on an anti-personnel mine)." R. at 14. He also "noticed such things as a lack of trust in people as a whole, a very defensive attitude of personal property [sic] toward people and an extremely difficult time showing love" to friends and family. *Id.* Appellant was examined by a Veterans' Administration (now Department of Veterans Affairs) (VA) psychiatrist and was diagnosed as having PTSD and multiple drug abuse, in remission. R. at 20. The Regional Office awarded appellant a 10–percent disability rating for PTSD but denied his claim for service connection for his heart condition. [Subsequent appeals regarding denial of service connection for a heart condition are not at issue in this appeal.] Br. of Appellant at 4.

In September 1988, appellant filed a claim for increased compensation for his PTSD. R. at 52. In support of his claim, he submitted a letter from his treating psychiatrist, Dr. Kavaney, regarding the difficulties he experienced as a result of his PTSD. R. at 34–35. Dr. Kavaney stated that appellant "continued to suffer from chronic preoccupation with his war experiences [and] a constant redreaming and reliving the experiences in Vietnam. His concentration has been greatly affected to the point where he is no longer able to work as a registered nurse. He's been plagued with problems with depression and emo-

tional lability." R. at 34. In addition, appellant provided a detailed account of daily problems which he attributes to his PTSD. These symptoms include, among others, being easily startled, migraine and tension headaches, gastric problems, sleep disorders and lack of endurance. R. at 44–45. He also provided his employment history, including lost time and wages. R. at 36–44.

Appellant was re-examined by a VA psychiatrist. That doctor found that appellant had poor cognitive function, quite prevalent extensive paranoid thinking, profound depression and frequent suicidal thoughts. He concluded that appellant suffered from "PTSD, chronic, severe, with marked depression and paranoid thinking", but was "competent to handle his own moneys and affairs." R. at 47–48. Appellant was also given a "social and industrial evaluation". That examiner found that appellant was "intent on disconnecting himself from intensity and fulfillment in most social and industrial themes but still steadily involved with employment and family in ongoing marginal ways." R. at 51. He concluded that appellant was "capable of ongoing employability even if the degree of investment appears moderated by emotional and physical perceptions of limitations." *Id.*

Appellant's rating for PTSD was increased to 30 percent. R. at 52. However, appellant filed a Notice of Disagreement with this rating, claiming that his rating should be higher than 30 percent. R. at 54. In his substantive appeal, appellant disagreed with information contained in the Statement of the Case which implied that he "got along well with fellow employees." He contended that his fellow employees at the Outreach Center were aware of his problems and tended to avoid him. R. at 60, 65.

The BVA denied appellant's claim for a higher disability rating. In its decision, the BVA noted that "appellant has some flashbacks to wartime experiences, has some depression, and undergoes some social isolation." *Larry W. Hillyard,* loc. no. 934178, at 5 (BVA Dec. 4, 1989). However, the BVA concluded that, since appellant

had a full-time job, was well oriented at his recent examination and did not have hallucinations or delusions, his "service-connected psychiatric disorder produce[d] no more than definite social impairment and no more than definite industrial impairment ... The criteria for a rating in excess of thirty percent for post-traumatic stress disorder is not warranted." *Id.*

Appellant has appealed the BVA decision to this Court. This Court has jurisdiction to hear the appeal pursuant to 38 U.S.C. § 4052 (1988).

## ANALYSIS

■ Appellant alleges that the BVA's finding of fact—that his disability merits no more than a 30–percent rating—should be set aside because it is clearly erroneous. Br. at 8. In his brief, appellant contends that the BVA relied on the fact that he was employed full-time to support its decision that appellant's condition did not warrant more than a 30–percent disability rating. Br. at 14. Appellant cites BVA decisions related to five separate claimants to support his argument that "there is nothing inconsistent with a 50–percent rating and the ability to obtain and retain employment." He then urges the Court to use these five decisions in a precedential manner. However, since appellant did not submit these five decisions to the BVA for consideration, we cannot now consider them. 38 U.S.C. § 4052(b) (1988).

■ Nonetheless, it should be noted that, under 38 C.F.R. § 19.197 (1990) (nonprecedential nature of Board decisions), "[p]reviously issued Board decisions will be considered binding only with regard to the specific case decided; prior decisions in other appeals may be considered to the extent that they reasonably relate to the case." Since each claim is fact specific, and since, as a practical matter, BVA decisions are not indexed by topic, the only value of the reasons or bases for BVA decisions in other cases is as argument in support of appellant's claim.

Appellant also contends that the decision is based solely on one finding of fact which merely "parrots" the VA's disability rating

schedule for PTSD. *Id.* at 9. The rating schedule, which is found at 38 C.F.R. § 4.132, Rating Code 9411 (1990), provides in pertinent part:

Ability to establish or maintain effective or favorable relationships with people is *considerably* impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in *considerable* industrial impairment ............................... 50%

*Definite* impairment in the ability to establish or maintain effective and wholesome relationships with people. The psychoneurotic symptoms result in such reduction in initiative, flexibility, efficiency and.reliability levels as to produce *definite* industrial impairment ............................... 30%

(Emphasis added.)

In support of the BVA's decision, the VA argued in its motion for summary affirmance that "[t]he record never established that Mr. Hillyard's ability to maintain effective or favorable relationships was considerably impaired *and* by reason of psychoneurotic symptoms, the reliability, flexibility and efficiency were so reduced as to result in considerable industrial impairment." (Appellee's motion for summary affirmance at 2.) Although both private psychiatric records and the VA psychiatric exam reveal that appellant's PTSD has caused him to suffer marked depression, isolation, and paranoia, it does not appear that these symptoms cause him considerable social and industrial impairment necessary to warrant a 50–percent rating.

The VA also argues that there is an "overwhelming preponderance of evidence" (Appellee's motion for summary affirmance at 1.) in the record supporting the BVA's decision. The VA cites the social and industrial examination conducted in 1988 (R. at 49–51) as evidence that appellant's disabilities produce no more than a definite social and industrial impairment as contemplated by the 30–percent rating. Appellant reported to that examiner that he experienced only usual on-the-job conflicts and had acceptable on-the-job relationships. He also stated that he "occasionally suffers

from concentration and memory problems on the job but ... [that his] fellow workers do not complain of his short falls." R. at 49. Although appellant later claimed that his co-workers were aware of his problems and tended to avoid him, it appears that the disabilities which are the result of his PTSD are not so severe as to cause him considerable impairment in performing his job or in interacting with co-workers.

■ A determination regarding the degree of impairment or disability suffered by a veteran is a finding of fact. *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990). "[I]t is the function of this Court to decide whether such factual determinations made by the BVA in a particular case constituted clear error.... [I]f there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them." *Gilbert v. Derwinski*, 1 Vet. App. 49, 53 (1990). While the information contained in the social and industrial examination report may not be an "overwhelming preponderance of evidence" that appellant's PTSD warrants only a 30–percent rating, it need not reach that level. The report was cited in the BVA decision as a basis for its finding that "the criteria for a rating in excess of thirty percent for post-traumatic stress disorder is not warranted." *Hillyard*, loc. no. 934178, at 5. Although the BVA decision is not a model of draftsmanship, we find that it contains a plausible basis for the BVA's factual determination in this case and that the BVA has provided adequate reasons and bases for its decision under *Gilbert*. We affirm.

*It is so Ordered.*