Gary F. LYNCH, Appellant,

v.

Hershel W. GOBER, Acting Secretary
of Veterans Affairs, Appellee.

No. 95–1100.

United States Court of Veterans Appeals.

Argued March 27, 1997.

Decided Dec. 22, 1997.

Mark L. Tapper, Springfield, VT, for appellant.

Barbara J. Finsness, with whom Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; and Adrienne Koerber, Deputy Assistant General Counsel, Washington, DC, were on the brief, for appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Vietnam veteran Gary F. Lynch, appeals an October 19, 1995, Board of Veterans' Appeals (Board or BVA) decision that a July 14, 1983, Department of Veterans Affairs (VA) regional office (RO) decision had not committed clear and unmistakable error (CUE) in denying service connection for post-traumatic stress disorder (PTSD). Record (R.) at 6–7. The appellant filed a brief and a reply brief, and the Secretary filed a brief. Oral argument was held on March 27, 1997, and the parties filed supplemental memoranda in June and August 1997 in response to an April 2, 1997, order of the Court. The appeal was timely filed, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm the Board's decision.

## I. Facts

The veteran served on active duty in the U.S. Army from December 5, 1967, to November 28, 1969, with at least one complete tour of duty in Vietnam. R. at 61. His service records do not indicate that he served in combat. Neither his medical examination

at induction (R. at 32–33) nor his service medical records note any relevant medical conditions (R. at 34–59).

In January 1982, the veteran filed with the VARO at the White River Junction, Vermont, VA Medical and Regional Office Center (VAMROC), an application for VA service-connected disability compensation or non-service-connected pension, claiming frostbite and a kidney ailment. R. at 64. The claims were denied in March 1982. R. at 68. On April 11, 1983, he filed with the same RO a new application for disability compensation, this time claiming a "nervous condition (Vietnam Syndrom[e])"; this application did not refer to any treatment for such a nervous condition or for PTSD. See R. at 71. The claim was apparently prompted by a VA outpatient psychiatric examination on April 6, 1983, conducted in the medical division of the White River Junction VAMROC, during which the veteran was diagnosed as having "post-VN [Vietnam] stress disorder"; however, the RO adjudication division at the White River Junction VAMROC did not obtain the record of that examination until December 1990 (see R. at 175–77), when the record was apparently forwarded to it by the veteran along with other medical records (see R. at 155–73). In an April 1983 letter, the RO informed the veteran of the need to submit "additional evidence to show that ... claimed disabilities have been treated since ... discharge from service", noting that "[t]he best type of evidence to submit would be statements from doctors who have treated you during this period." R. at 75. The veteran then submitted private medical records showing treatment for a variety of unrelated conditions. R. at 77–100. A July 1983 RO decision denied the claim, stating: "No further action can be taken unless evidence is submitted to show incurrence in or aggravation by service and present existence". R. at 103, 105. This RO decision was apparently never appealed, and it thus became final.

In May 1990, the veteran attempted to reopen the disallowance of his PTSD claim. R. at 121. Newly submitted evidence clearly diagnosed PTSD. A November 1989 private psychological evaluation noted that "[s]ervice-connected trauma have left [the veteran] with post-traumatic stress symptoms as well as generalized anxiety" and "these psychiatric difficulties were not evident prior to Vietnam and are a sequelae to his war experiences"; the psychologist diagnosed PTSD. R. at 114–15. In June 1990, the veteran submitted an affidavit describing his wartime experiences. He explained that although he was classified as a mechanic, he served on guard duty, was "frequently" under fire from enemy mortars, bagged bodies, went on patrol, and provided first aid to injured soldiers; he also described the overrunning of Landing Zone Oasis, where he was stationed. R. at 126–27. He stated that he suffered ongoing consequences of those experiences, including nightmares, blackouts, and an inability to maintain a job or trust other people. R. at 128–29. A November 1990 letter from the Department of the Army Joint Services Environmental Support Group provided a history of the veteran's unit (R. at 145–52) and confirmed that Landing Zone Oasis was "nearly overrun" and that personnel there "manned bunkers, received hostile fire, gave life saving first aid, and then evacuated the wounded" (R. at 142). In December 1990, the RO received the results of the 1983 outpatient examination, and a January 1991 VA psychiatric examination also diagnosed PTSD. R. at 196–200. Ultimately, a March 1991 RO decision granted service connection for PTSD, rated at 50% disabling, with an effective date of May 7, 1990—the date of the application for reopening. R. at 203–05.

The veteran appealed the RO decision as to the effective date; he contended that the effective date should have been based upon the 1983 examination. R. at 210–11. A June 1992 RO decision increased his disability rating to 100%, effective as of May 7, 1990, but denied an effective date earlier than May 1990 because the 1983 RO decision "became final when it was not appealed within one year". R. at 241–44. In July 1994, the BVA remanded the veteran's claim in order for the RO to consider in the first instance whether CUE had been committed in the 1983 RO decision. R. at 273. In August 1994, the RO, pursuant to the remand, found no such CUE because in 1983 "the claim was processed in accordance with the procedures in effect at the time based on the factual record

which was before the decision makers at the time." R. at 276.

In the October 19, 1995, BVA decision here on appeal, the Board concluded as well that there was no CUE in the 1983 RO decision; the Board noted that that decision "was reasonably supported by the evidence on file at that time and prevailing legal authority". R. at 7. The Board relied upon VA Office of General Counsel Precedential Opinion 12–95 (May 10, 1995) [hereinafter G.C. Prec. 12–95] to conclude that the constructive-notice doctrine of *Bell v. Derwinski*, 2 Vet.App. 611 (1992) (per curiam order), could not be applied prior to the rendering of the decision in *Bell*; that the law prior to *Bell* did not include a constructive-notice rule; and that the RO's failure to consider in July 1983 evidence that was then within VA's—but not the RO's—possession could not therefore be CUE. R. at 11–19. The Board thus denied an earlier effective date for service connection for PTSD. R. at 21. A timely appeal to this Court followed.

## II. Analysis

The appellant has raised four contentions on appeal: (1) That the constructive-notice doctrine articulated in *Bell, supra*, should be applied retroactively in this case, in spite of the Court's conclusion in *Damrel v. Brown*, 6 Vet.App. 242, 246 (1994), because the constructive-notice doctrine was part of applicable law before *Bell*; (2) that the BVA, as a matter of equity, had applied a constructive-notice doctrine to grant effective dates prior to the July 1992 decision in *Bell*, although not in this case, and that the failure to do so in this case is thus arbitrary and capricious; (3) that even if the constructive-notice doctrine is not applicable in this case, the RO had "actual" receipt of that report, or the veteran was justified in so believing, because the RO and the VA medical facility that produced the 1983 outpatient medical examination report that diagnosed PTSD were colocated at the White River Junction VAMROC; and (4) that, to the extent that the RO applied DVB Circular 21–82–7, captioned "Post-Traumatic Stress Disorder" and dated May 3, 1982, in denying his claim, the RO impermissibly relied upon unpromulgated substantive rules. *See* Appellant's Brief (Br.) at 8–10; Appel-

lant's Memorandum (Mem.) at 9–10. As to the first three issues, the Secretary contends that *Damrel* controls. He also argues that the BVA decisions cited by the appellant for the proposition that VA has applied constructive notice to award effective dates earlier than the date of the *Bell* decision occurred after *Bell* and before *Damrel* or that those decisions reflect VA's application of its understanding of the *Bell* decision before *Damrel* clarified that *Bell* is not retroactive; the Secretary disputes that the RO had "actual" receipt of the 1983 examination report so as to make it part of the record before the RO as to this claim. Secretary's Br. at 10–15.

### A. CUE

■ Section 3.105(a) of title 38, Code of Federal Regulations, provides:

Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a) (1996). A claim of CUE is a collateral attack on a prior final VA decision. *See Duran v. Brown*, 7 Vet.App. 216, 223–24 (1994); *Talbert v. Brown*, 7 Vet. App. 352, 355 (1995); *see also* Pub.L. No. 105–111, 111 Stat. 2271 (Nov. 21, 1997) (codifying § 3.105(a) in 38 U.S.C. § 5109A and superseding the ruling in *Smith (William) v. Brown*, 35 F.3d 1516, 1526 (Fed.Cir.1994), by adding 38 U.S.C. § 7111 to make prior final BVA decisions also subject to CUE challenge). In *Russell v. Principi*, 3 Vet.App. 310 (1992) (en banc), the Court defined CUE as follows:

Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.... [CUE is] the sort of error which, had it not been made, would have manifestly changed the outcome ... [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.

*Id.* at 313–14. "In order for there to be a valid claim of [CUE], ... [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Ibid.*

 *Russell* also established that, as a threshold matter, a CUE claim cannot be raised for the first time before this Court but that the claim must have been the subject of a final prior BVA adjudication. *Id.* at 314–15. On appeal of a BVA determination that there was no CUE in a prior final VA decision, the Court's review is limited to determining whether that BVA determination on appeal is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and whether it is supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)). *See Damrel,* 6 Vet.App. at 246; *Lizaso v. Brown,* 5 Vet.App. 380, 385 (1993); *Russell,* 3 Vet.App. at 315. In *Russell,* the Court also stated: "A determination that there was 'clear and unmistakable error' must be based on the record and the law that existed at the time of the prior" decision. *Id.* at 314.

In the present case, there is no question that the 1983 RO decision became final and is thus subject to a CUE challenge. Accordingly, if the Court were to conclude that the April 1983 VA outpatient medical examination report in question was constructively or actually part of the record before the RO at the time of its July 1983 decision, it appears that that RO decision would not have been made upon "the correct facts, as they were known at the time", *id.* at 313. However, although such an RO adjudication made without the "correct facts" would have been an error, it would have been CUE *only* if the RO's failure to consider that record was the "sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made." *Ibid.* In *Russell,* the Court noted that such a determination was one to be made by the Board in the first instance. *Id.* at 320. In the instant case, because the BVA has never decided whether the VA outpatient record in question "would have manifestly changed the outcome", if the Court were to conclude that that record was

constructively before the RO, the proper step would be to remand the case as did the Court in *Russell, id.* at 315, 320, 322, for a determination on the decisive CUE question, which would be whether the inclusion of the 1983 VA outpatient medical report in the record before the RO at the time of its 1983 decision would have entitled the appellant to a PTSD service-connection award at such time. Accordingly, we turn next to the constructive-notice issue.

### B. Constructive Notice

██ In *Bell,* the Court concluded:

Where, as here, a dispute arises over the content of the record and where the documents proffered by the appellant are within the Secretary's control and could reasonably be expected to be a part of the record "before the Secretary and the Board," such documents are, in contemplation of law, before the Secretary and the Board and should be included in the record.

*Bell,* 2 Vet.App. at 613. *Bell* held that, where such material "could be determinative of the claim and was not considered by the Board, a remand for readjudication would be in order." *Ibid.; see also Simington v. Brown,* 9 Vet.App. 334, 335 (1996) (per curiam order). On its face, *Bell* thus stands for the principle that, at least for the purpose of determining whether a record on appeal (ROA) is complete and a case is ripe for judicial review, VA has constructive notice of VA-generated documents that could "reasonably" be expected to be part of the record and that such documents are thus *constructively* part of the record before the Secretary and Board even where they were not *actually* before the adjudicating body.

██ As to retroactive application of *Bell,* in *Damrel, supra,* the Court provided elaboration of *Bell* in a context like that of the present case. The Court therein concluded as follows, in the course of providing three alternate justifications for affirming a Board conclusion that there was no CUE in an RO decision as to which the appellant there sought to bring a CUE claim:

While the Secretary is deemed to have constructive knowledge of [VA-generated

documents not actually before the RO], *see Bell* [,*supra* ], the question is whether the information should be deemed to be in the record as of 1967. The answer is no. Under *Russell*, 3 Vet.App. at 314, only the "law that existed at the time" of the prior adjudication ... can be considered. The constructive notice rule of *Bell* was not formulated until 1992....

*Damrel*, 6 Vet.App. at 246. *Damrel* thus decided that the *Bell* constructive-notice doctrine is not retroactive to VA adjudications occurring before *Bell* was handed down. Although *Damrel* appears dispositive, the appellant seems to make three arguments as to why *Damrel* should not control: (1) A constructive-notice doctrine was ensconced in VA law and (as shown by BVA decisions) in VA practice before *Bell;* (2) even after *Damrel,* as a matter of equity, BVA decisions have applied constructive notice, thereby making arbitrary and capricious the BVA's failure to apply it in the instant case; and (3) *Dinsay v. Brown*, 9 Vet.App. 79, 88 (1996), is inconsistent with *Damrel* and suggests that *Bell* can, in fact, apply retroactively.

As to the appellant's first two arguments, to the extent that they rely on BVA decisions, they must fail. It is well established that BVA decisions are of no precedential value before the BVA or this Court. *See Hillyard v. Derwinski*, 1 Vet.App. 349, 351 (1991); 38 C.F.R. § 20.1303 (1996). Thus, prior BVA decisions do not *control* the outcome of a particular case. The appellant's contention that the BVA in this case deviated from a clear pattern of BVA decisions that had recognized and applied a constructive-notice doctrine and that such a deviation would be arbitrary and capricious decision making is but another way of trying to import precedential value to nonprecedential BVA decisions, and must fail. Moreover, the Court has examined the 22 BVA decisions that the appellant included in the Appendix to his brief and finds that he is mistaken in contending that there is any such pattern before *Bell* or since *Damrel.*

As to the portion of the appellant's first argument that a constructive-notice doctrine was part of the law that federal courts had recognized as applicable to VA benefits decisions, it would appear that such an argument was implicitly rejected by *Damrel*. However, we understand that the appellant is contending that even though *Damrel* decided that constructive notice as recognized in *Bell* could not be applied to pre-*Bell* RO decisions being assailed on CUE grounds, such a constructive-notice doctrine was actually in effect at the time of the July 1983 RO decision in this case. The specific facts of *Damrel* involved a CUE attack on a 1967 RO decision, and the decision in the instant case involves a CUE attack on an RO decision made 17 years later in 1983. Accordingly, assuming that *Damrel* might be read very narrowly so as not to preclude a determination that there may have been a constructive-notice doctrine in effect in 1983, even though there was not one in 1967, we have examined applicable caselaw to determine whether there is any basis for the appellant's contention. For the following reasons, we conclude that there is not.

*1. Caselaw as to constructive-notice doctrine.* The Secretary calls the Court's attention to the May 10, 1995, G.C. Prec. 12–95 that concluded that *Bell* was not to be applied retroactively. This opinion contains an inventory of federal appellate cases that suggest that a constructive-notice doctrine was specifically not imputed to VA at any time before *Bell* was decided by this Court. *See United States v. Willoughby*, 250 F.2d 524, 530 (9th Cir.1957) (distinguishing *United States v. Kelley, infra*, and holding that knowledge possessed by "claims" branch of VA should not be imputed to insurance-service branch); *United States v. Kiefer*, 228 F.2d 448, 450–51 (D.C.Cir.1956) (rejecting *Kelley, infra*, and concluding that VA insurance division does not have imputed knowledge of information in veteran's claims file as maintained by compensation division), *cert. denied*, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815 (1956); 358 U.S. 828, 79 S.Ct. 47, 3 L.Ed.2d 67 (1958); *Jones v. United States*, 106 F.2d 888, 891 (5th Cir.1939) ("we do not think that the knowledge which physicians connected with the [Veterans'] Bureau obtained in investigating the compensation claim, though their reports be in a file concerning that claim, is to be imputed to the Director in passing on the applications for

the conversion and for the reinstatement of the insurance policy which were fair on their face"); *see also Middlesex Mutual Ins. Co. v. Levine,* 675 F.2d 1197, 1202 (11th Cir.1982) (citing *Halverson v. United States, infra,* and *Schrader v. Prudential Ins. Co. of America, infra,* for proposition that information contained in one department of VA is not chargeable to VA insurance division); *Schrader,* 280 F.2d 355, 361–62 (5th Cir.1960) (noting that "information in the records of another branch of the government, or a different branch of the Veterans' Administration itself, is not chargeable to the insurance service"); *United States v. Nero,* 248 F.2d 16, 19–20 (2d Cir.1957) (relying on *Kiefer, supra,* for proposition that only "actual knowledge" of insurance division was relevant to whether that division had knowledge of compensation record); *United States v. Sinor,* 238 F.2d 271, 276 (5th Cir.1956), *cert. denied,* 353 U.S. 985, 77 S.Ct. 1287, 1 L.Ed.2d 1144 (1957) (finding of disability for compensation purposes is not notice of disability that serves as application for premium waiver to insurance division; "[t]he activities of the Veterans [sic] Administration are of vast magnitude"); *United States v. Cooper,* 200 F.2d 954, 956 (6th Cir.1953) (knowledge of VA "services governing hospitalization and vocational rehabilitation" not imputed to insurance division); *Clohesy v. United States,* 199 F.2d 475, 477–78 (7th Cir.1952) (interpreting *Kelley, infra,* as dependent upon facts of that case where insurance department had actual knowledge of compensation-division records, and distinguishing *First Nat. Bank of Chicago, infra* ); *Halverson,* 121 F.2d 420, 422–23 (7th Cir.1941), *cert. denied,* 314 U.S. 695, 62 S.Ct. 412, 86 L.Ed. 556 (1941) (compensation division's knowledge of veteran's condition will not estop insurance division from canceling policy later). *But see Kelley,* 136 F.2d 823 (9th Cir. 1943) (on facts of case, VA insurance division had "actual knowledge" of application for compensation because it was "part of the Administration's own records", so that insurance division could not be considered to have relied upon veteran's statement that he had never applied for "Government compensation"); *cf. United States v. First Nat. Bank of Chicago,* 138 F.2d 681, 684 (7th Cir.1943) ("Veterans' Bureau", upon notification of death of veteran, should have notified "Pension Bureau", and Pension Bureau, which continued to issue pension checks that were fraudulently endorsed, therefore charged with constructive knowledge of death of veteran for purposes of concluding that Pension Bureau was barred from recovery from prior holders), *rev'd on other grounds, National Metropolitan Bank v. United States,* 323 U.S. 454, 456–57, 65 S.Ct. 354, 355–56, 89 L.Ed. 383 (1945).

Although the above-cited cases do not deal precisely with the question at hand—whether VA outpatient medical records could have been considered to have been constructively before the RO of the White River Junction VAMROC in 1983—they *at most* suggest that there was no clear or uniform rule of law prior to *Bell* that knowledge of medical records would be imputed to a VA division that did not actually have the records. (Moreover, all these cases are consistent with a concern that fraudulent insurance claims not succeed.) The appellant has cited no authority to the contrary, and the Court has found no other evidence that an obligation to take constructive notice of VA-generated documents was incumbent upon VA prior to the Court's decision in *Bell, supra.* Thus, *Damrel* controls and the appellant's first two contentions are unavailing.

**2.** *Inconsistencies between* **Damrel** *and* **Dinsay.** The appellant also argues that *Dinsay, supra,* is directly in conflict with the Court's opinion in *Damrel.* In *Dinsay,* the Court noted:

> [I]f relevant evidence as to a procedural defect or other error in the [pre–1992] RO decision was actually *or constructively (see Bell* [*,supra* ] ) present within the VA system, although not before the adjudicator, at the time of the RO decision, that evidence could possibly serve as the basis for a new CUE claim ... that 'the correct facts, as they were known at the time, were not before the adjudicator'.

*Dinsay,* 9 Vet.App. at 88 (emphasis added). However, that analysis, even if the Court were to find it to be inconsistent with *Bell,* arises in dictum, and there is thus no precedential conflict between *Damrel* and *Din-*

*say.* Moreover, because our decision today establishes unequivocally that there is no constructive-notice doctrine outside of *Bell* and that *Damrel* rules out the retroactive application of the *Bell* doctrine, the *Dinsay* dictum no longer has any viability as to constructive notice. The appellant's third contention is thus also unavailing.

**3. Conclusion as to constructive notice.** Consequently, the Court concludes that the appellant's contention that the RO had constructive notice of the April 1983 medical examination report at the time of its July 1983 decision is barred by the Court's decision in *Damrel, supra,* barring retroactive application of *Bell, supra,* as well as by the Court's conclusions in part II.B.1., above, that the doctrine of constructive notice was not ensconced in VA law prior to or absent this Court's decision in *Bell.*

### C. Actual Receipt

In its April 2, 1997, order, the Court, inter alia, sought supplemental briefing from the parties on the question of the appropriate interpretation of the words "the record" in *Russell's* conclusion that "[a] determination that there was [CUE] **must be based on the record** and the law that existed at the time of the prior" decision, *Russell,* 3 Vet.App. at 314 (emphasis added). In his response, the appellant contends that "the record" is not limited to documents actually in the appellant's claims file, and he relies upon language in Judge Kramer's concurrence in *Caffrey v. Brown,* which refers to situations where "facts ... were in the VA record, but somehow were not actually in front of the adjudicator" and to "evidence in the possession of VA at the time of a particular challenged adjudication". *Caffrey,* 6 Vet.App. 377, 384 (1994) (Kramer, J., concurring). The Secretary states that, for RO decisions occurring prior to the constructive-notice doctrine of *Bell,* "the record" means only the documents physically contained in the claims file at the time of adjudication.

For the reasons discussed below, the Court concludes that the Secretary's reading is too narrow and that "the record" for purposes of *Russell* is not limited to documents actually within the claims file. However, the Court also concludes that the term does not extend, absent the effect of *Bell,* to incorporate *every* document submitted to or produced by any division of VA. The appellant correctly notes that Judge Kramer's concurrence in *Caffrey* well describes the meaning of "the record". In elaborating on the proposition that "the facts so known at the time to be correct were in the VA record, but somehow were not actually in front of the adjudicator", the concurrence there states:

> For example, [assume that] an appellant had submitted *three* items of evidence, all indicating a date stamp of receipt by the VA prior to the adjudication in question; however, in rendering a decision, the adjudicator specifically stated that the record contained *two* pieces of evidence submitted by the appellant.

*Caffrey,* 6 Vet.App. at 384 (Kramer, J., concurring). Similarly, *Dinsay* referred to evidence "present within the VA system, although not before the adjudicator ... [that] could possibly serve as the basis for a new CUE claim". *Dinsay,* 9 Vet.App. at 88. And in *Beyrle v. Brown,* 9 Vet.App. at 382, 384 (1996), the Court explicitly referred to "evidence of record before the RO" and remanded for the Board to discuss "all the evidence before the RO". Thus, contrary to the Secretary's reading, under our caselaw the domain denoted by "in the record" encompasses evidence submitted to the RO but for some reason either not in the claims file or in the claims file but not before the adjudicator at the time of the decision.

However, the Court is unwilling, absent the application of *Bell,* to extend the term so far as to include any VA medical examination report (as distinguished perhaps from one then having been requested by the RO) that is in the possession of a medical division of VA and not in the possession of the adjudication division. The Court does not believe that the resolution of this question should turn on the relatively unusual administrative arrangement in the instant case where the medical and benefits divisions of a VA regional operation are under a common administrative support mechanism, as they are at the White River Junction VAMROC. The situation there appears to be

similar to the administrative arrangement in VA Central Office where the Veterans Benefits Administration and the Veterans Health Administration are under one head, the Secretary, but still are fundamentally separate entities. *Cf.* 38 C.F.R. § 17.125(c) (1996) (identifying VAMC at the VAMROC as a separate entity by providing that claims for reimbursement for medical treatment for services rendered in Canada "should be filed with the Chief, Medical Administration Service (136), Department of Veterans Affairs Medical Center, White River Junction, Vermont"). The Court thus concludes that, putting to one side the *Bell* constructive-notice doctrine, actual possession by the medical division is not "actual" possession by the benefits adjudication division for the purpose of *Russell* in the VAMROC situation any more than it could be if the medical center and RO divisions were separate entities located proximate to one another. Indeed, *Bell* treated as a matter of "constructive" notice rather than, in some sense, "actual" receipt the possession by VA of a pertinent record that was generated by or submitted to an RO but was not in a veteran's claims file.

Therefore, the Court rejects the appellant's contention that the RO here had "actual" receipt of the VA outpatient medical record at the time of the 1983 RO denial of the claim. Additionally, given the Court's conclusion that neither the law nor the facts support such actual receipt, the veteran could not have been entitled to assume, as he contends, that the RO adjudication division was in receipt of the medical examination record.

### D. DVB Circular 21–82–7

█ The Court's disposition, above, of the constructive/actual notice issue disposes of the case because the ROA contains no indication that the record before the RO at the time of its 1983 decision contained any evidence of a present diagnosis of PTSD. A service-connection claim must be accompanied by evidence that establishes that the claimant currently has the claimed disability. *See Brammer v. Derwinski,* 3 Vet.App. 223, 225 (1992) (absent "proof of a present disability there can be no valid claim"); *see also Rabideau v. Derwinski,* 2 Vet.App. 141, 144

(1992). In the absence of such a diagnosis, the veteran's claim for service connection for PTSD could not have been awarded in 1983 in any event, and the Court thus declines to decide any question in connection with the 1983 RO decision's application or interpretation of the 1982 DVB Circular 21–82–7.

### III. Conclusion

Upon consideration of the ROA and the pleadings of the parties and for the foregoing reasons, the Court holds that the October 19, 1995, decision of the Board finding no CUE in the 1983 RO decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A)) and was supported by an adequate statement of "reasons or bases" (38 U.S.C. § 7104(d)(1)). *See Damrel,* 6 Vet. App. at 246; *Lizaso, supra; Russell,* 3 Vet. App. at 315. The October 18, 1995, BVA decision is therefore affirmed. The Court wishes to express its appreciation to both parties for the supplemental briefing.

AFFIRMED.