# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

NO. 11-726

LEONARD BERAUD, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided May 17, 2013)

*Mary Hoefer*, of Iowa City, Iowa, was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *David L. Quinn*, Deputy Assistant General Counsel; and *Monique A.S. Allen*, all of Washington, D.C., were on the brief for the appellee.

Before LANCE, PIETSCH, and BARTLEY, *Judges*.

LANCE, *Judge*, filed the opinion of the Court. BARTLEY, *Judge*, filed a dissenting opinion.

LANCE, *Judge*: The appellant, veteran Leonard Beraud, appeals through counsel a December 15, 2010, decision of the Board of Veterans' Appeals (Board) that, in pertinent part, denied entitlement to an effective date prior to August 27, 2004, for the grant of service connection for migraine headaches due to head trauma over the right eye, including whether there was clear and unmistakable error (CUE) in a November 1985 rating decision. The Board also remanded the issue of entitlement to a total disability rating based on individual unemployability. The Court lacks jurisdiction over this matter, and it will not be addressed further. *See* 38 U.S.C. §§ 7252(a), 7266(a); *Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000). As any pending, unadjudicated claims arising under 38 C.F.R. § 3.156(b) from the submission of new and material evidence after the November 1985 rating decision were terminated by a final February 1990 rating decision, and

because the Board properly determined that Mr. Beraud's assertions of error in the November 1985 rating decision do not rise to the level of CUE, the Court will affirm the Board's decision.

## I. FACTS

Mr. Beraud served on active duty in the U.S. Navy from July 25, 1974, to July 6, 1977, and served in the U.S. Naval Reserve until May 3, 1988. Record (R.) at 173, 761. On November 3, 1975, while serving on the U.S.S. *John F. Kennedy*, he was struck in the head, resulting in a laceration above his right eye that required sutures. R. at 1654, 1800-01. A June 1, 1977, separation examination reported a normal clinical evaluation for the head and for neurologic conditions but noted a scar above Mr. Beraud's right eyebrow. R. at 1815.

In March 1985, Mr. Beraud submitted a claim seeking entitlement to service connection for headaches. R. at 1922-25. A March 19, 1985, VA medical certificate notes that he complained of headaches and stated that he had suffered from them since 1981. R. at 1895. Similarly, in an April 14, 1985, self-report of medical history given as part of a reenlistment examination, Mr. Beraud complained of frequent or severe headaches "since 1981 following [a] duty accident [in] 1981." R. at 1825.

The New Orleans, Louisiana, VA regional office (RO) mailed a letter to Mr. Beraud on November 12, 1985, requesting additional information. R. at 1871. Specifically, the RO stated:

> We are having difficult in locating your service medicals. Since your discharge from service please give us the name [and] complete mailing address of any reserve units you have been assigned to. It may expedite your claim if you know where your records are located to contact that facility personally [and] have them forward your Medical records. Please reply as soon as possible, within 30 days.

R. at 1871. Additional boilerplate in the letter instructed Mr. Beraud to submit any new evidence within 60 days. *Id*.

On November 29, 1985, the RO issued a decision denying Mr. Beraud's claim. R. at 1870. The RO mailed notice of the decision to him on December 9, 1985, and informed him that he could submit new evidence and could appeal the decision to the Board. R. at 1867-68. Later that same month, Mr. Beraud submitted a response to the November 12, 1985, letter, stating that his medical

2

records were located at the Naval Reserve Readiness Center in New Orleans. R. at 1865. Mr. Beraud did not file a Notice of Disagreement (NOD) with the November 1985 RO decision.

Subsequently, in November 1988, the RO issued a decision that granted service connection for Mr. Beraud's right eyebrow scar and denied entitlement to service connection for blurred vision. R. at 1861-62. Mr. Beraud did not appeal that decision; however, in December 1989, he submitted a request, in part, to reopen his headache claim. R. at 1849. In February 1990,[1] the RO reopened his headache claim but denied it on the merits. R. at 1853. The RO notified Mr. Beraud of its decision in March 1990, and he did not file an appeal. R. at 1852.

In 1992 and 2001, Mr. Beraud submitted additional requests to reopen his headache claim. R. at 1799, 1847. In both instances, the RO determined that he had not submitted new and material evidence and denied his requests. R. at 1704-07; 1805-06. On August 27, 2004, Mr. Beraud submitted a request for an increased rating for his right eyebrow scar. R. at 1699. He underwent a VA compensation and pension examination in November 2004, and the examiner opined that it was as likely as not that his headaches were related to his 1975 in-service injury. R. at 1654-56. In a December 13, 2004, decision, the RO awarded service connection for headaches, evaluated as 50% disabling. R. at 1651-53. Mr. Beraud filed an NOD in January 2005, R. at 1628, and he perfected his appeal to the Board in August 2005, asserting that the effective date for his headaches "should be dated back to the first time that [he] filed," R. at 1491. In addition to this challenge to the proper effective date, Mr. Beraud also filed a motion in November 2006 that asserted CUE in the November 1985 RO decision. R. at 1244.

On December 15, 2010, following additional development, the Board issued the decision here on appeal. R. at 2-20. In it, the Board determined that both the November 1985 and February 1990 RO decisions were final, and it held that Mr. Beraud's contentions did not rise to the level of CUE. R. at 12-14. Accordingly, the Board denied entitlement to an effective date prior to August 27, 2004, for the grant of service connection for migraine headaches. R. at 17.

---

[1] The Board, in its December 2010 decision, refers to this as a "March 1990" decision, due to the fact that the RO did not mail the decision to Mr. Beraud until that time. *See* R. at 14, 1852. For the sake of clarity, the Court will use the February 1990 date.

## II. THE PARTIES' ARGUMENTS

Mr. Beraud first argues that the Board clearly erred when it determined that he was not entitled to an effective date prior to August 27, 2004, for the grant of service connection for migraine headaches. Appellant's Brief (Br.) at 6-8. Specifically, he contends that his December 1985 letter to the RO constituted new and material evidence that, pursuant to 38 C.F.R. § 3.156(b),[2] gave rise to a pending and unadjudicated claim. *Id.* In support of this argument, Mr. Beraud cites the Court's decision in *Young v. Shinseki*, 22 Vet.App. 461, 468-69 (2009), for the proposition that his December 1985 letter rendered the November 1985 rating decision not final. Appellant's Br. at 8 (citing *Muehl v. West*, 13 Vet.App. 159 (1999)). The Secretary responds that the November 1985 decision is final, as Mr. Beraud failed to file an NOD with that decision. Secretary's Br. at 5-8. He also contends that the appellant's December 1985 letter did not constitute new and material evidence and so did not give rise to a pending, unadjudicated claim pursuant to § 3.156(b) and *Young*. Secretary's Br. at 5-8. In the alternative, he argues that, even assuming that the March 1985 claim remained pending, that pendency was terminated by the unappealed February 1990 rating decision. *Id.* at 8.

Next, Mr. Beraud contends that the Board erred when it determined that the November 1985 rating decision was not the product of CUE. Appellant's Br. at 8-14. In particular, he asserts that the correct facts were constructively in the record but were not before the adjudicator, as the RO failed to obtain his VA outpatient medical records and service records from his Reserve service. *Id.* (citing *Bell v. Derwinski*, 2 Vet.App. 611 (1992)). The Secretary responds that the constructive possession doctrine articulated in *Bell* is not applicable, as the November 1985 rating decision predates the Court's decision in that case. Secretary's Br. at 11 (citing *Lynch v. Gober*, 11 Vet.App. 22, 29 (1997), *vacated and remanded on other grounds sub nom. Lynch v. West*, 178 F.3d 1312 (Fed. Cir. 1998) (table), *reinstated by Lynch v. West*, 12 Vet.App. 391 (1999) (per curiam order)). He also argues that, per this Court's decision in *Damrel v. Brown*, 6 Vet.App. 242, 243 (1994), constructive notice obligations for VA do not apply to CUE claims. *Id.*

---

[2] At the time of the 1985 RO decision, this regulation was codified at 38 C.F.R. § 3.156(a). *Compare* 38 C.F.R. § 3.156(a) (1985), *with* 38 C.F.R. § 3.156(b) (2012).

Finally, Mr. Beraud asserts generally that, even absent any error as to the merits of its determinations, the Board failed to provide an adequate statement of reasons or bases for its decision. Appellant's Br. at 8-11.

## III. ANALYSIS

### A. Pending, Unadjudicated Claim

A "pending claim" is "[a]n application, formal or informal, which has not been finally adjudicated." 38 C.F.R. § 3.160(c) (1985) (unchanged in 2012 verison). "Consistent with this regulation . . . , this Court has held that a claim remains pending—even for years—if the Secretary fails to act on a claim before him." *Ingram v. Nicholson*, 21 Vet.App. 232, 240 (2007). Thus, for example, when a claimant submits new and material evidence within the one-year appeal period after a rating decision is issued, the RO must readjudicate the claim, and failure to do so may render the claim pending and unadjudicated. *Young*, 22 Vet.App. at 468; 38 C.F.R. § 3.156(b).

However, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has also held that "a subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim." *Williams v. Peake*, 521 F.3d 1348, 1351 (Fed. Cir. 2008). This "later disposition, denying the claim on its merits, also decides that the earlier identical claim must fail." *Id.* Put another way, "a reasonably raised claim remains pending until there is . . . an explicit adjudication of a subsequent 'claim' for the same disability." *Ingram*, 21 Vet.App. at 243. "[W]hen the substance of a later-filed claim is addressed in an RO decision, the claimant can infer that the earlier-filed claim based on the same disability has also been adjudicated." *Charles v. Shinseki*, 587 F.3d 1318, 1323 (Fed. Cir. 2009) (citing *Williams*, 521 F.3d at 1350).

This principle holds true where, as here, the subsequent claim is a request to reopen that is reopened and adjudicated on the merits.[3] *Juarez v. Peake*, 21 Vet.App. 537, 542 (2008) ("Both [the]

---

[3]Indeed, pursuant to *Juarez*, this principle holds true even when the subsequent final adjudication of the claim finds no new and material evidence has been submitted to reopen the claim. 21 Vet.App. at 542 ("Stated another way, the appellant's original claim for service-connected compensation benefits, even if still pending at that time, was denied when the April 1996 RO explicitly determined that new and material evidence had not been submitted to reopen his claim.").

5

original claim and [the] claim to reopen are claims for compensation for [the same] condition—an asserted service-connected disability."); *cf. Charles*, 587 F.3d at 1323 (explaining that "whether a subsequent claim that is abandoned renders an earlier pending claim also abandoned" is a "markedly different" situation than a case where "a later-filed claim is adjudicated on the merits"). Further, a claimant whose pending claim is decided in this manner may still challenge VA's failure to adjudicate the earlier claim by appealing the subsequent decision. *Williams*, 521 F.3d at 1351 ("When notice is given of the final adjudication of the later claim, the veteran's right to appeal the disallowance exists. When the veteran prevails on such an appeal, the effective date of his relief relates back to the date of the filing of his original claim."); *see also Juarez*, 21 Vet.App. at 542 ("Where the reason for denying the benefit is invalid, the proper remedy is a timely appeal.").

In light of this clear precedent, the Court holds that if a claim is pending by virtue of the submission of new and material evidence under 38 C.F.R. § 3.156(b), the subsequent final adjudication on the merits of the same claim terminates the pending claim. *See id.*; *Ingram*, 21 Vet.App. at 243. To hold otherwise would not only contradict the precedent set by this Court and the Federal Circuit, it would also call into question the finality of uncountable rating decisions. Moreover, this holding does not deprive claimants of the opportunity to challenge VA's procedural failures; it merely restricts the method of doing so to a challenge to the subsequent adjudication.

This holding is consistent with prior decisions of this Court and the Federal Circuit. Although the appellant cites *Young* and *Muehl*, both *supra*, in support of his arguments, neither case involved a subsequent final denial on the merits. Rather, they stand for the proposition that the submission of new and material evidence within the one-year appeal period may give rise to a pending, unadjudicated claim, which the Court does not dispute.

In *Young*, for example, the appellant submitted additional evidence in June 1997, less than one year after a September 1996 RO decision denied entitlement to an increased rating for post-traumatic stress disorder (PTSD). 22 Vet.App. at 467. The RO, rather than making a determination as to whether that evidence was new and material, interpreted it as a new request for an increased rating, which it denied in a December 1997 decision. R. at 464. Mr. Young was later awarded an increased rating for his PTSD in a March 2003 rating decision, effective June 1997—the date he submitted the new evidence. *Id.* at 464. Mr. Young appealed the effective date determination. *Id.*

The Court remanded, holding that if VA determined that the June 1997 evidence was new and material, Mr. Young could be entitled to an effective date of the date of his original claim. *Id.* at 469. Critically, unlike the present case, there was no intervening, final decision on the merits between the September 1996 decision and the March 2003 decision, as Mr. Young had continuously pursued an appeal of the December 1997 decision. Similarly, the Court's holding also comports with the Federal Circuit's decision in *Bond v. Shinseki*, 659 F.3d 1362 (Fed. Cir. 2011), which, like *Young*, involved a claimant's ability to use § 3.156(b) to challenge the proper effective date after a subsequent grant of a claim when there was no intervening final decision on the merits. Indeed, the Federal Circuit favorably cited *Young* in that decision. 659 F.3d at 1368-69.

Applying the above holding to the facts of this case, Mr. Beraud's arguments must fail. Whether or not the December 1985 letter constituted new and material evidence sufficient to give rise to a pending, unadjudicated claim, the February 1990 decision reopened and readjudicated his headaches claim and denied it on the merits.[4] R. at 1853. The Board determined that the February 1990 RO decision was final,[5] and the Court is not persuaded that this determination is clearly erroneous. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."); *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). The Court thus holds that any pending, unadjudicated claim was terminated by the February 1990 RO decision and, accordingly, that the Board did not err by failing to award an earlier effective date on this basis. Mr. Beraud had the opportunity to directly appeal the February 1990

---

[4] Contrary to the view taken by our dissenting colleague, the RO is presumed to have considered all the evidence of record at the time of its February 1990 decision, including the appellant's December 1985 letter. *See Gonzales v. West*, 218 F.3d 1378, 1381 (Fed. Cir. 2000) ("[A]bsent specific evidence indicating otherwise, all evidence contained in the record at the time of the RO's determination of the service connection must be presumed to have been reviewed by [VA], and no further proof of such review is needed."). To the extent that there is a question whether the RO sought the service records discussed in the December 1985 letter, any failure to do so would at most constitute a failure to fulfill the duty to assist, which, as discussed below, cannot constitute CUE. *See Cook v. Principi*, 318 F.3d 1334, 1341 (Fed. Cir. 2002); *Caffrey v. Brown*, 6 Vet.App. 377, 382 (1994).

[5] Indeed, the Board decision explicitly states that "[t]he [February] 1990 rating decision denied service connection for headaches as they were not considered to be related to military service. The Veteran was notified of the decision and his appellate and procedural rights, but did not appeal the decision. Therefore, the decision is final." R. at 14. In light of this specific determination, the Court is perplexed by Mr. Beraud's assertions that "[t]he finality of the February 1990 decision has never been addressed in these proceedings" and that "[t]he Board decision of December 2010 specifically found that the 1985 RO decision was final and did not address any other claims." Appellant's Reply Br. at 5.

7

decision, at which time he could have challenged VA's actions prior to that decision. He did not do so, and he may not now resurrect a claim terminated by that subsequent final adjudication.[6] Mr. Beraud remains free to challenge the February 1990 rating decision on the basis of CUE by filing an appropriate request with the RO. *See Jarrell v. Nicholson*, 20 Vet.App. 326, 334 (2006) (en banc) (the Court lacks jurisdiction to address a CUE motion in the first instance).

### B. CUE in the November 1985 Rating Decision

A CUE motion is a collateral attack on a final RO or Board decision. *Disabled Am. Veterans v. Gober*, 234 F.3d 682, 696-98 (Fed. Cir. 2000). To establish CUE in a final RO decision, a claimant must show that (1) either the facts known at the time were not before the adjudicator or that the law then in effect was incorrectly applied; and (2) had the error not been made, the outcome would have been manifestly different. *Grover v. West*, 234 F.3d 682, 696-98 (Fed. Cir. 2000); *Hillyard v. Shinseki*, 24 Vet.App. 343, 349 (2011). "[T]he alleged error must be 'undebatable,' not merely 'a disagreement as to how the facts were weighed or evaluated.'" *Id.* (quoting *Russell v. Principi*, 3 Vet.App. 310, 313-14 (1992) (en banc)). The Court's review of the Board's determination on the existence of CUE is limited to whether that conclusion was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 38 U.S.C. § 7261(a)(3); *Hillyard*, 24 Vet.App. at 349; *Russell*, 3 Vet.App. at 315.

The appellant's argument that the RO's failure to obtain his service department records constitutes CUE is unpersuasive, as a breach in the duty to assist cannot constitute CUE. *Cook*, 318 F.3d at 1341; *Caffrey*, 6 Vet.App. at 382. Similarly, although the appellant cites *Bell*, *supra*, for the proposition that his VA clinical records were constructively before the RO at the time of its November 1985 decision, this Court has clearly held that *Bell* does not extend retroactively to claims decided before it was handed down. *Damrel v. Brown*, 6 Vet.App. 242, 246 (1994). Finally, the appellant has not otherwise persuaded the Court that "the correct facts in . . . the record were not before the adjudicator" or that "the statutory or regulatory provisions in existence at the time were

---

[6] To be clear, the Court does not suggest that the same result would necessarily follow in this case absent the intervening final decision, and our dissenting colleague is correct that, absent an intervening final decision, the Board's failure to consider the applicability of § 3.156(b) could potentially be problematic. However, because the February 1990 decision, as noted above, is presumed to have considered all the evidence of record, its finality precludes the appellant from challenging earlier procedural defects at this time. *See Cook*, 318 F.3d at 1339 ("The purpose of the rule of finality is to preclude repetitive and belated readjudications of veterans' benefits claims.").

incorrectly applied." *Hillyard*, 24 Vet.App. at 349; *see Hilkert*, *supra*. The Court thus holds that the Board's determination that the November 1985 rating decision was not the product of CUE was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A).

### C. Reasons or Bases

The Board is required to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert*, *supra*.

To the extent that the appellant faults the Board for failing to discuss whether his 1985 claim was pending and unadjudicated, the Board was not required to do so. As explained above, the February 1990 rating decision—which the Board found to be final—terminated the pending status of the 1985 claim at the time of that decision, *see Williams*, 521 F.3d at 1351. Hence, whether or not he had a pending and unadjudicated claim before the February 1990 decision is irrelevant to the Board's decision. Similarly, to the extent that the appellant argues that the Board erred by failing to discuss VA's purported failure to obtain his treatment records, those records were not constructively part of the record as a matter of law, and the Board did not err by failing to discuss this issue. *See Damrel*, *supra*. The Court therefore holds that the Board provided an adequate statement of reasons or bases for its decision.

## IV. CONCLUSION

Regardless of whether Mr. Beraud's December 1985 letter gave rise to a pending, unadjudicated claim under *Young* and § 3.156(b), any error on the part of the RO in failing to

adjudicate such a claim was cured when it issued the February 1990 rating decision. Mr. Beraud had the opportunity to challenge any perceived procedural defects by filing an NOD with that decision, but, for whatever reason, he chose not to do so, and the Court will not now permit him to reargue the merits of that final decision. He remains free to file a motion with his RO asserting CUE in the February 1990 rating decision. In addition, the Board correctly determined that Mr. Beraud's assertions of error in the November 1985 rating decision do not rise to the level of CUE, and it provided an adequate statement of reasons or bases for its decision.

Accordingly, the Board's December 15, 2010, decision is AFFIRMED.


BARTLEY, *Judge*, dissenting: I respectfully dissent because the majority wrongly limits the effect of 38 C.F.R. § 3.156(b) and the Board's failure to address whether § 3.156(b) warrants an earlier effective date of benefits prejudiced Mr. Beraud. Section 3.156(b), "*Pending claim*," indicates that pendency of a claim continues until the requisite new and material evidence is *considered*. Here, the veteran's Naval Reserve medical records referenced in his 1985 submission appear to be yet unobtained. *See* R. at 1852-53 (1990 rating decision showing that the new evidence considered consisted solely of 1989 VA outpatient reports, with no Reserve records mentioned). Because § 3.156(b) was reasonably raised by the veteran's 1985 submission but not addressed by the Board when it determined the veteran's effective date of benefits, the Court should remand the matter for the Board to consider whether § 3.156(b) applies.

This Court recognizes § 3.156(b) as "a veteran-friendly provision that allows for the assignment of an effective date of the date of the original claim when certain requirements are met." *Young v. Shinseki*, 22 Vet.App. 461, 469 (2009) (citing 72 Fed. Reg. 28,778 (May 22, 2007)). The Federal Circuit has made clear that § 3.156(b) requires VA to "assess any evidence submitted during the relevant period and make a determination whether it constitutes new and material evidence relating to the old claim." *Bond v. Shinseki*, 659 F.3d 1362, 1367 (Fed. Cir. 2011). In *Voracek v. Nicholson,* the Federal Circuit additionally concluded that the regulation requires VA to assess whether the newly submitted evidence "*and evidence incorporated therein by reference* qualify as 'material'" to the original claim. 421 F.3d 1299, 1303 (Fed. Cir. 2005) (emphasis added). Here, Mr. Beraud's submission, received within the one-year appeal period following the November 1985 RO

decision and referencing the location of his Naval Reserve service records, obligated the Board to address whether that submission and any evidence incorporated therein by reference meet the requirements of § 3.156(b) and would result in an earlier effective date of benefits. The Board did not fulfill this obligation.

Section 3.156(b) emphasizes that whether pendency continues depends on whether a decision issued subsequent to the submission of the new and material evidence *considered* the new evidence:

> New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed (including evidence received prior to an appellate decision and referred to the agency of original jurisdiction by the Board of Veterans Appeals *without consideration in that decision* in accordance with the provisions of [38 C.F.R. ] § 20.1304(b)(1) of this chapter), will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.

38 C.F.R. § 3.156(b) (2012) (emphasis added). *Consideration* of the new and material evidence is crucial and the regulation indicates that pendency continues, despite the existence of a Board denial subsequent to the submission of the new and material evidence, if the Board did not evaluate that evidence. *See King v. Shinseki,* 23 Vet.App. 464, 467 (2010) (concluding that if "new and material evidence had been submitted *and had not been acted upon*, Mr. King's claim could still be pending until a decision had been made *on that evidence*" (emphasis added)). The majority fails to account for § 3.156(b)'s emphasis on continuing pendency until *consideration* of the new evidence and fails to acknowledge the potential effect of this emphasis in Mr. Beraud's case, where it appears that his 1985 submission was neither initially nor subsequently *considered*.

The majority attempts to stretch the presumption referred to in *Gonzales,* that "*absent specific evidence indicating otherwise*" evidence *undisputedly in the record* "must be presumed to have been reviewed by [VA]," to cover Mr. Beraud's case. *See* ante note 4, quoting *Gonzales v. West,* 218 F.3d 1378, 1381 (Fed. Cir. 2000)) (emphasis added). However, even at the time of the 1990 RO denial, Mr. Beraud's Naval Reserve service records apparently had not been obtained and were not in the record. This distinguishes *Gonzales* from the present case and rebuts any "presumption of review" that might arise. Because *Voracek* interpreted § 3.156(b) as requiring VA to *consider* the materiality of any evidence incorporated by reference into Mr. Beraud's 1985 submission, VA's failure to do so is a violation of § 3.156(b) and not merely a failure to fulfill the duty to assist, as the majority asserts.

11

More generally, the majority asserts that "'a subsequent final adjudication of a claim which is identical to a pending claim that had not been finally adjudicated terminates the pending status of the earlier claim.'" *Ante* at 5 (quoting *Williams v. Peake*, 521 F.3d 1348, 1351 (Fed. Cir. 2008), and citing *Ingram v. Nicholson*, 21 Vet.App. 232, 243 (2007)). However, that principle is unpersuasive because Mr. Beraud's claim for an earlier effective date involves a specific regulation, § 3.156(b), that requires continued pendency of a claim, even where there is a subsequent final denial, if the evidence has not been *considered* by the adjudicating or appellate body. 38 C.F.R. § 3.156(b). *Williams* and *Ingram* focused broadly on whether VA's failure to explicitly deny a claim or notify the veteran of the denial might allow the claim to remain pending. Those cases do not determine the outcome in Mr. Beraud's earlier-effective-date claim, which involves interpreting the effect of § 3.156(b) where VA never acted on or considered his 1985 submission. Therefore, affirmance of the Board decision based on *Williams* and *Ingram* is illfounded. The Court should hold that under § 3.156(b), when an appellant submits evidence before the expiration of the appeal period, or before the appellate decision issues if a timely appeal has been filed, finality accrues only when VA *considers* that submission and the evidence incorporated therein. The pendency of a claim, the finality of which § 3.156(b) abates if there is submission of new and material evidence during the appeal period, should not be terminated by an intervening RO decision that likewise fails to consider that evidence–such an outcome defeats the apparent purpose of the regulation.

Finally, apart from an unsound interpretation of the effect of § 3.156(b), the majority fails to acknowledge Federal Circuit caselaw that, at a minimum, requires remand for VA to search for Mr. Beraud's Naval Reserve medical records. In *McGee v. Peake*, the Federal Circuit reversed this Court and held that the Board had erred by failing to seek service department records *that might establish an earlier effective date of benefits*. 511 F.3d 1352, 1358 (Fed. Cir. 2008). The Federal Circuit concluded that VA was obligated to search for service department records that might have been generated pursuant to a title 10 provision because that provision was "relevant" and 38 U.S.C. § 7104(a) requires the Board to base its decisions on "relevant provisions of law." *Id.* The Federal Circuit noted that in claims for disability compensation, "Congress requires the VA to obtain '[t]he claimant's service medical records and, if the claimant has furnished the Secretary information sufficient to locate such records, other *relevant* records pertaining to the claimant's active military,

12

naval, or air service that are held or maintained by a governmental entity.'" 511 F.3d at 1357 (quoting 38 U.S.C. § 5103A(c)(1)). As in *McGee,* in Mr. Beraud's case a unique provision, § 3.156(b), appears to apply and might afford Mr. Beraud an earlier effective date of benefits. Therefore, the Board was obligated to address § 3.156(a) and perform any development necessary to determine the proper effective date of benefits, consistent with the duty to consider all relevant provisions of law under section 7104(a) and the duty to obtain relevant records related to service under section 5103A(c)(1).

The majority allows the Board to avoid its responsibility to make factual and legal findings necessary for a full and complete decision. As noted earlier, the Board decision is devoid of any mention of § 3.156(b)–the Board failed to make findings concerning whether Mr. Beraud's 1985 submission qualifies as new and material evidence or whether the 1990 denial affects the application of § 3.156(b). It is not appropriate for this Court to make such determinations in the first instance. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000); *Buie v. Shinseki,* 24 Vet.App. 242, 247 (2011). At the very least, the Board's failure to consider and discuss § 3.156(b), and make the factual findings required by that regulation, rendered the Board's statement of reasons or bases for its decision inadequate. *See* 38 U.S.C. § 7104(a) (requiring the Board to consider and discuss all "applicable" provisions of law and regulation); *Payne v. Derwinski*, 1 Vet.App. 85, 87 (1990) ("The [Board] is not free to ignore regulations which the VA has adopted. Once a veteran raises a . . . claim to which a regulation could reasonably apply, the [Board] must apply that regulation or give the reasons and bases explaining why it is not applicable.").

Therefore, I respectfully dissent.

13